**UNITED STATES v. PUGLIESE.**
No. 105.

Circuit Court of Appeals, Second Circuit.
Dec. 26, 1945.

Henry G. Singer, of Brooklyn, N. Y. (Harry Silver and Philip P. Zarch, both of Brooklyn, N. Y., on the brief), for appellant.

J. Wolfe Chassen, of Brooklyn, N. Y. (T. Vincent Quinn, U. S. Atty., and Vine H. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Pugliese appeals from a judgment entered upon the verdict of a jury, convicting him of possessing distilled spirits, upon the "containers" of which the required revenue stamps had not been affixed. The evidence was as follows. A police officer of the City of New York on June 2, 1944, in company with other policemen called at a house in Brooklyn soon after he had seen Pugliese ride away from it on a bicycle. Pugliese's wife (who was tried with him but acquitted) came to the door, and he told her that the officers had information that she was selling alcohol and whisky. He asked whether they might come in to investigate, and she said that they might. He then asked her where her husband was, and she said she did not know, and could not tell when he would come back; but that they might look around the house which was their dwelling. This they did and found nothing, although, while they were doing so, four men came and knocked on the door, and the officers upon searching them found that two of them were carrying empty half-pint bottles. The officer then asked her why her husband had several times gone to a vacant house which stood just behind; and she answered that they owned that house too, and that he had to go there once in a while. When they asked whether that house was open, she said, "go and see"; and again,

when asked if the officers might look through it, she answered, "of course." They searched the rear house and found in the cellar a large quantity of empty liquor bottles, and finally, concealed behind a panel in an upper floor, more than twenty-two gallons of alcohol unstamped. On returning to the dwelling they showed this alcohol to the defendant's wife who declared she knew nothing about it, except that she did know the alcohol was there, but that her husband might know more about it than she. They placed her under arrest, and on the next day a federal officer arrested Pugliese himself at the first house. Evelyn Esposito and her husband were two other witnesses: for about eight months, ending in April of the same year, they had lived in the rear house as tenants of Pugliese, whom they had known by the name of Russo. During that time he used two rooms of the house for mixing alcohol, and it was permissible to infer from her testimony that he concealed this by means of the same sliding panel behind which the liquor seized had been found. Pugliese's wife aided him in the business, and Evelyn Esposito had been employed to sell the alcohol to customers who came there. The appellant upon this appeal raises four grounds for reversal. (1) The judge's denial of a mistrial following an episode we shall describe. (2) The introduction in evidence of the alcohol, because its seizure by the policemen was illegal. (3) The judge's refusal to charge the jury not to regard the testimony of Evelyn Esposito as proving the crime, but only as tending to prove a similar offense; and that the fact that the defendants had committed a similar offense did not prove or establish their guilt in the case at bar. (4) The judge's refusal to tell the jury not to use against Pugliese the talk between his wife and the policemen. These points we will take up in the foregoing order.

The motion for a mistrial was based upon the following circumstance. After Evelyn Esposito had testified on the direct, cross and redirect, the defence again cross-examined her, as appears in the margin.[1] Upon the close of the prosecution's case the defence rested without calling any witnesses, whereupon the prosecution called

---

[1] "Q. Have you been ill within the last eight or nine years? A. Ill?

"Q. Yes. A. No.

"Q. Have you been in any institution or hospitals? A. No.

"Q. Are you certain about that? A. Positive.

"Q. Never in your life, up to today? A. That's right.

"Q. You have never spent any time

the attorney for the defence to the stand and examined him, as also appears in the margin.[2] The defence then moved for a mistrial which the judge denied. The re-cross-examination which we have quoted, whether so designed or not, was certainly calculated to leave in the jury's mind the impression that at some time in the past Evelyn Esposito had been in the hospital for some mental malady; that being the only kind of malady that would have impaired her credibility. After she had once categorically denied that she had been in any hospital at all, the substance of the question was repeated six times, always with the same result. It was indeed permissible to do this, if the defence meant to contradict her; perhaps it was proper to do so, even though it had evidence to contradict her which it did not mean to use. The issue was not one on which it was bound by the witness's answers, for the evidence, if it existed, was competent directly to impeach the witness. Therefore, although the prosecution could not have raised it, once raised, it was entitled to present its own side. It waited to see whether the defence had any basis for the insinuation, and when it appeared that none was to be produced, two courses were open to it. It might rely in summing up upon the failure of the defence to put in any evidence, or it might probe for any that existed, for, if there was any, certainly it was not privileged. This is what the prosecution did; it was quite within its rights, and the judge's ruling was wrong only in not allowing the examination to be pressed so as to disclose whatever evidence the defence might be withholding.

■ Next, as to the search and seizure of the alcohol in the vacant house at the rear. In the circumstances the judge would have been justified in concluding that the wife's consent was enough, for reasons which will appear later; but the question does not really arise because no federal official was concerned in the search, directly or indirectly. Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159; Schroeder v. United States, 2 Cir., 7 F.2d 60; United States v. Diuguid, 2 Cir., 146 F. 2d 848. As we understand it, the reason for the exclusion of evidence competent as such, which has been unlawfully acquired, is that exclusion is the only practical way of enforcing the constitutional privilege. In earlier times the action of trespass against the offending official may have been protection enough; but that is true no longer. Only in case the prosecution which itself controls the seizing officials, knows that it cannot profit by their wrong, will that wrong be repressed. If so, when the offenders are not responsible to the prosecution, they have too remote an interest in its success, if they have any at all, to make exclusion a remedy. Be the explanation what it may, the distinction is too well established to be questioned in the lower courts.

■ The next point in the refusal of the judge to tell the jury that they should not use the testimony of Evelyn Esposito "as proof of the accusation made in this case." In consonance with the uniform doctrine we have often held that the fact that testimony is evidence of another crime is no objection to its introduction, if it is rationally probative of the crime charged. Kaplan v. United States, 2 Cir., 7 F.2d 594, 597; Greater New York Live Poultry Chamber of Commerce v. United States, 2 Cir., 47 F.2d 156, 159; Vause v. United States, 53 F.2d 346, 355; United States v. Pleva, 2 Cir., 66 F.2d 529, 531. Evelyn Esposito's testimony complied with the

---

in any hospital or institution of any kind whatever? A. No, sir.

"Q. And no illness of any kind? A. No.

"Q. Are you sure about that? A. Yes."

[2] "Q. Mr. Singer, have you any documentary proof or any other proof to indicate that the witness, Mrs. Esposito, was in any institution in the last eight years for any mental or physical illness? * * * A. I do.

"Q. Will you kindly produce that evidence. A. I don't have any written evidence, I have oral evidence.

"Q. Will you produce your oral evidence, if you can? * * * A. And I said I did over objection.

"Q. And I said if you can produce it, kindly produce it.

"The Court: He does not have to produce it.

"Q. You have no documentary proof, is that right? A. I refuse to answer any further on the matter unless the court will instruct me.

"The Court: I won't instruct you. That is enough."

condition. Its relevancy did not, and indeed could not, demand that it be conclusive; most convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person. All that is necessary, and all that is possible, is that each bit may have enough rational connection with the issue to be considered a factor contributing to an answer. Wigmore § 12. In the case at bar, the testimony of the policeman, if believed, proved beyond question that in the rear house someone had committed the crime charged. That did not indeed inevitably point to Pugliese, although, all things considered, a jury might have concluded that he was more likely to be the man than anyone else. But the testimony of Evelyn Esposito, if in turn believed, added that, two months before, Pugliese and his wife had been actively engaged in a business which involved repeated commissions of the same crime. Quite aside from any question of knowledge or intent, the relevancy of this to the factum of the crime depended merely upon whether a fair minded person might think that it was likely that Pugliese was the owner of the seized liquor, because he had repeatedly been the owner of other illicit liquor in the same place, two months before. To us the answer seems too obvious for debate, and we venture to believe that a layman would be at a total loss to understand how the question could be put seriously. Legal reasoning is no different from any other kind of reasoning, unless it be spurious legal reasoning. It is true that evidence rationally probative ought sometimes to be rejected if it is likely unduly to complicate the issues, and prolong the trial; but this testimony did neither. The only conceivable objection to it was that it did involve proof of earlier crimes, an objection which, as we have said, was without any legal warrant.

The last point is the judge's refusal to direct the jury not to use against Pugliese the declarations of his wife to the policeman. The fact that the couple was not indicted for conspiracy, was irrelevant in determining the competency against him of any thing she might say. American Fur Company v. United States, 2 Pet. 358, 365, 7 L.Ed. 450; Tuckerman v. United States, 6 Cir., 291 F. 958, 970; Gooch v. United States, 10 Cir., 82 F.2d 534, 536, 537. That depended upon whether what she said was a step in a venture to which both were parties. If it was, it was admissible in any prosecution or in any civil action; if it was not, it was as incompetent in a prosecution for conspiracy as anywhere else, although it appears impossible to disabuse prosecutors of the contrary belief. As we said in Van Riper v. United States, 13 F.2d 961, 967: "When men enter into an agreement for an unlawful end, they become ad hoc agents for one another, and have made 'a partnership in crime.' What one does pursuant to their common purpose, all do, and, as declarations may be such acts, they are competent against all." See also United States v. Goodman, 2 Cir., 129 F.2d 1009, 1013. The admissibility of the wife's declarations in the case at bar was for the judge, and the fact that the jury later acquitted her was irrelevant. The issue before him was altogether different from that before them: he had only to decide whether, if the jury chose to believe the witnesses, Pugliese and his wife were engaged in a joint undertaking; they had to decide whether they believed the witnesses beyond a doubt. Nor did it make any difference that, when the judge ruled, the prosecution had not yet proved a common enterprise; the order in which the evidence goes in is never important. Cohen v. United States, 2 Cir., 157 F. 651, 655; Hoeppel v. United States, 66 App.D.C. 71, 85 F.2d 237, 242; United States v. Manton, 2 Cir., 107 F.2d 834, 844. At least after Evelyn Esposito had testified, it would have been plain error to grant the motion to strike out the wife's declarations as against Pugliese. The only conceivable doubt might be whether the venture had ended, and there was in fact no reason to suppose so. She had not been arrested, and the impression which she apparently wished to make was that they had nothing to conceal; a common enough device to lay suspicion. Nor was it any evidence that the venture had ended that she said that her husband might know more about the seized liquor than she. He was not there and if the answer parried further uncomfortable questioning at the time, it might well prove an advantage to both. At any rate it rested on the defence to show that the community of interest, once begun, had ceased; prima facie she was trying to evade the consequences of the discovery of the liquor in the interest of both of them. We need not therefore decide whether, if it had been an error to admit the declarations against Pugliese that error would have required us to reverse the conviction. How far a jury which had heard

evidence, can in practice use it against one of several accused and not against others, is very questionable at best; most persons cannot think in watertight compartments. However, it is often necessary to tell the jury to try to do so, when there is a joinder of several accused, and we do not question the right of those against whom any evidence is legally incompetent to demand the admonition, little as we may believe it will ever really benefit them, or can possibly be a factor decisive in the result.

Conviction affirmed.