**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Otis TRAMMEL, Jr.,
Defendant-Appellant.**

**No. 76–1834.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Dec. 14, 1977.

Decided Oct. 11, 1978.

Joseph F. Dolan, U. S. Atty., Denver, Colo. (James L. Treece, former U. S. Atty., and Rodney W. Snow, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Frederick A. Fielder, Jr., Fielder & Wiggins, P. C., Denver, Colo., for defendant-appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Otis Trammel, Jr. appeals his conviction, following a trial by jury, of the offenses of importation of heroin, 21 U.S.C.A. § 952(a), and conspiracy to import heroin, 21 U.S.C.A. §§ 962(a), 963 (1970). Trammel was tried jointly with two co-defendants, Edwin Lee Roberts and Joseph Freeman. The three had been charged, by indictment, with importation and conspiracy to import heroin.

The three were charged with conspiracy to transport heroin from the Philippines to the United States and with the actual importation of heroin. None of the three defendants testified at trial. The government's case was substantially anchored to the testimony of two unindicted co-conspirators, Janice Keenan, a friend of Edwin Lee Roberts, and Elizabeth Trammel, wife of appellant Otis Trammel, Jr. Janice Keenan and Elizabeth Trammel had been granted immunity from prosecution in return for their testimony.

Prior to trial, appellant moved to sever his trial from that of Roberts and Freeman, or, in the alternative, to prevent his wife, Elizabeth Trammel, from testifying against him.

On appeal, Trammel contends that the trial court committed reversible error by allowing his wife to testify against him over his objection and without his consent. He asserted, of course, the husband/wife privilege which prevents one spouse from giving testimony adverse to the other without his or her consent. We hold that the trial court did not err in admitting the testimony of Elizabeth Trammel.

The court did exclude evidence of confidential communications between the Trammels. However, the court denied Otis Trammel's assertion of the husband/wife testimonial privilege.

Trammel argues that the trial court erred in admitting the testimony of his wife, Elizabeth, against him because they were validly married at all times charged, the charges do not involve an assault by him against her and the charges do not involve an assault by him against children of their marriage. The Government argues that Elizabeth Trammel's testimony was properly admitted inasmuch as it was limited to acts as distinguished from *communications* and to statements of Otis Trammel made in the presence of third parties. Thus, the government reasons that the privilege does not arise. Further, the government contends that even if the communications could be considered confidential and privileged, still they would not be protected from dis-

closure where both spouses participated in the unlawful enterprise.

Trammel relies primarily on *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). That opinion does reaffirm the long-standing common law rule which prohibits one spouse from either voluntarily or under compulsion testifying against the other spouse in a criminal prosecution wherein the other spouse is a defendant, unless the other spouse consents thereto. The Supreme Court stated that "The rule rested mainly on a desire to foster peace in the family and on a general unwillingness to use testimony of witnesses tempted by strong self-interest to testify falsely." 358 U.S. at p. 75, 79 S.Ct. at p. 137. Nothing in *Hawkins* or any other reported decision, to our knowledge, prohibits the voluntary testimony of a spouse who appears as an unindicted co-conspirator under grant of immunity from the Government in return for her testimony.

■ The crux of the common-law rule in the case of a defendant husband, as here, is that the exclusion of the wife's testimony is required in order to prevent ill feeling against her on the husband's part for her revelation of the truth. Thus, the privilege is that of the defendant spouse preventing the other spouse from testifying against him without his consent. *Hawkins v. United States, supra; United States v. Apodaca*, 522 F.2d 568 (10th Cir. 1975); *United States v. Harper*, 450 F.2d 1032 (5th Cir. 1971); *United States v. Moorman*, 358 F.2d 31 (7th Cir. 1966), *cert. denied*, 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93; *Peek v. United States*, 321 F.2d 934 (9th Cir. 1963), *cert. denied*, 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964).

*Hawkins, supra*, and other decisions involving the same issue, have stressed that the courts have the right and the responsibility to examine the policies behind the federal common law privileges and to alter, modify or amend them when reason and experience so demand.

■■ In our view, a compelling need to alter or amend the common-law rule enunciated in *Hawkins* is dictated by "reason and experience" in the instant case. The witness, Elizabeth Trammel, was a co-conspirator, a participant in the heroin importation scheme and transaction. As such, she was subject to prosecution. The federal immunity statutes, 18 U.S.C. §§ 6001–6005, represent an accommodation between the right of the Government to compel testimony on the one hand, and the constitutional privilege to remain silent, on the other. *United States v. Tramunti*, 500 F.2d 1334 (2nd Cir. 1974), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The purpose of the grant of immunity is to reach the truth, and when that testimony is incriminatory, it cannot be used against the witness. The Congressional intent, then, is that the statutory claim of immunity be as broad as, but no broader than, the privilege against self-incrimination. *Childs v. McCord*, 420 F.Supp. 428 (D.C.Md.1976), affirmed, 556 F.2d 1178 (4th Cir. 1977).

■ A defendant has no standing to contest the propriety of the grant of immunity to a witness. *United States v. Rauhoff*, 525 F.2d 1170 (7th Cir. 1975). Otis Trammel, as a defendant, thus was without standing to challenge the grant of immunity to his wife, Elizabeth, unless the privilege asserted by reason of the marital relationship is such that the rule of "reason and experience" mandates that the privilege asserted overrides the grant. We hold that it does not.

In our view the allegiance reaffirmed in *Hawkins, supra*, to the marital testimonial privilege grounded on the policy of preserving or fostering family peace must give ground to a greater, more compelling public need before us here. This case, unlike *Hawkins* and other like cases, involves the wife as a participant in the criminal transaction, subject to prosecution therefor. It matters not, in this context, that the witness granted immunity is the spouse of one of the defendants. The common law did not fail to recognize that the rule of privilege between husband and wife was subject to some exceptions, generally premised on the ground of necessity. The necessity was

that of avoiding an extreme injustice to the excluded spouse which would ensue upon an undeviating enforcement of the rule. Accordingly, an exception which has been widely recognized in order to protect both the husband and wife arises in cases involving a crime perpetrated by one spouse against the other, termed a "personal wrong." The predicate, of course, is that it is illogical to believe that marital peace can be achieved or promoted by denying a wife who has been beaten, deserted or otherwise badly maltreated the right to testify against her husband about those wrongs. 8 Wigmore on Evidence, McNaughton Revision, Vol. VIII, § 2239.

The various judicial utterances on the matter of the exercise of the privilege establish that the privilege belongs to the *party* spouse against whom the other is offered as a witness; however, it is firmly established that the privilege also belongs to the *witness* spouse. *See, generally,* 81 Am.Jur.2d, Witnesses, Husband and Wife, §§ 148–171; Wigmore on Evidence, McNaughton Ed., Vol. VIII, Ch. 79, §§ 2227–2245; *United States v. Cameron,* 556 F.2d 752 (5th Cir. 1977).

None of the decisions applying the unvarying prohibition rule, i. e., that one spouse may not give testimony against the other without his or her consent, involve the fact situation presented here: Where both the husband and wife have jointly participated in a criminal conspiracy, both are subject to prosecution, and one spouse testifies against the interest of the other under grant of immunity. However, in *United States v. Smith,* 520 F.2d 1245 (8th Cir. 1975), the court held that in a prosecution of a husband and wife jointly charged with conspiracy, statements made by either inculpatory to the other during the course of and in furtherance of the conspiracy were admissible. *See, also,* 16 Am.Jur.2d, Conspiracy, § 41.

A claim of the Fifth Amendment privilege is a prerequisite to the grant of immunity. Thus, the constitutional privilege cannot be violated before it can be invoked. In the case at bar, then, Elizabeth Trammel did invoke her Fifth Amendment privilege against self-incrimination. Having done so, she brought herself—as a party to the criminal transaction—within the rule that she who would have the benefit of the privilege must claim it.

This court has held that a defendant husband, in a criminal proceeding, cannot avail himself of the asserted marital privilege preventing the Government from presenting inculpatory testimony of his spouse where the marriage was found to have been entered into fraudulently. *United States v. Apodaca,* 522 F.2d 568 (10th Cir. 1975). We hold that, to like effect, a defendant husband who has jointly participated in a criminal conspiracy with his wife cannot prevail upon his claim of the marital privilege when his wife gives incriminating testimony under grant of immunity.

We have read and considered *United States v. Williams,* 447 F.2d 894 (5th Cir. 1971); *Ivey v. United States,* 344 F.2d 770 (5th Cir. 1965) and *Peek v. United States, supra.* These opinions stand for the bald rule that the testimony of a spouse who is a co-conspirator in the same transactional criminal charges brought against the other spouse cannot testify against the charged spouse in derogation of the husband-wife privilege. These decisions, significantly, do not involve the testimony of a spouse given under grant of immunity. Thus, the "balancing test" function was not brought into play in the above cited opinions.

The applicable rule and reason, in our view, is that applied in *United States v. Van Drunen,* 501 F.2d 1393 (7th Cir. 1974), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974). There the defendant's wife was permitted to testify against him relative to matters involving the illegal transportation of an alien which *both* spouses participated in. There was no grant of immunity involved in the case. The court recognized that *Hawkins, supra,* was arguably a barrier to the result reached but concluded:

> . . . here, we think that goal (that of preserving the family) does not justify assuring a criminal that he can enlist the

aide of his spouse in a criminal enterprise without fear that by recruiting an accomplice or coconspirator he is creating another potential witness.

\*    \*    \*    \*    \*    \*

We do not view *Hawkins* as controlling. . . . The Supreme Court has since announced an exception to *Hawkins* for cases where one spouse commits a crime against the other (*Wyatt v. United States*, 362 U.S. 525, 80 S.Ct. 901, 4 L.Ed.2d 931), and we decline to read the *Hawkins* opinion as foreclosing the possibility of other exceptions not discussed therein.

501 F.2d, at pp. 1396, 1397.

Fed.Rules Evid. Rule 501, 28 U.S.C.A. does not recognize a per se marital privilege rule. It does state the general rule of privilege to be ". . . governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Thus, several courts, including this court, have followed the rule we here apply involving similar husband-wife conspiracy transactions. *Baker v. United States*, 329 F.2d 786 (10th Cir. 1964), *cert. denied*, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964); *United States v. Pugliese*, 153 F.2d 497 (2nd Cir. 1945).

Immunity statutes have been characterized as essential to the effective enforcement of criminal statutes. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Inasmuch as the constitutional guarantees against self-incrimination apply solely for the benefit of a witness in danger of actual conviction (such as Elizabeth Trammel in the instant case), otherwise privileged testimony involving self-incriminating matters may be required.

■ Exceptions to the common-law rules excluding privileged testimony by one spouse against the other in a criminal prosecution must be made in order to effect the beneficent purposes of the rule. In keeping with the mandates of Rule 501, *supra*, federal courts must determine on a case-to-case basis whether "reason and experience" dictates the alteration or amendment of the marital privilege. In the present case, we believe that there are certain factors which, for all practical purposes, indicate that the testimony of Elizabeth Trammel was not the "death knell" to the existence of the marriage. The parties were extensively engaged in criminal activities shortly following their marriage on May 31, 1975. The record fairly evidences that commencing in August of 1975, Otis Trammel, Jr., (Elizabeth's husband), Edwin Lee Roberts and Joseph Freeman conspired and "masterminded" the scheme to accomplish importation of heroin into the United States from Thailand. Elizabeth Trammel may or may not have freely consented to her participation in the scheme. The record fairly reflects, we believe, that both Elizabeth Trammel and Janice Keenan were "conduits" or "actors" to accomplish the illicit goals of the scheme. They were being "used." Whether they participated voluntarily or otherwise at all times in a matter for rank conjecture. The record is clear, however, that when their participation in the conspiratorial enterprise was discovered by federal DEA agents who then confronted them, each agreed to cooperate with the federal agents, and they did so. The record evidences that each woman followed instructions from the three charged co-conspirators. Neither planned nor "masterminded" the importation scheme. The same is not true of appellant Otis Trammel, Jr.

It is inconceivable that the Trammels established a "home" with any of the usual, ordinary attributes of "family life." There was no domestic harmony in the commonly accepted nature of a marital relationship to be preserved following commencement of the criminal activities in August of 1975. Beyond this, the nature of the criminal activities pursued are despicable and completely alien to anything conducive to the preservation of a family relationship built around the legal status of marriage. The conduct of the parties shortly following their marriage to the time of appellant Trammel's arrest lent absolutely nothing in building upon, preserving or fostering

"family peace" not only "for the benefit of husband, wife and children, but for the benefit of the public as well." *Hawkins v. United States, supra*, 358 U.S. at pp. 77, 79, 79 S.Ct. at p. 138.

The facts and circumstances reflected by this record mandate the exception referred to in *Hawkins, supra*, and Rule 501, *supra*. The illicit heroin importation activities pursued by the parties would have effectively denied the establishment of "family peace" which could in anywise have been alienated by Elizabeth Trammel's testimony. Thus, reason and experience dictate that the marital privilege rule could not be invoked by appellant Trammel. The law does not force or encourage testimony which would likely alienate husband and wife, or inflame "existing domestic differences." The overriding benefit to be served in this case has been properly served by the action of the trial court: that of bringing to the bar of justice those who have committed grievous criminal acts which most assuredly have led to the breakdown and destruction of many family units and marital relations involving illicit trafficking and use of dangerous drugs and narcotics.

WE AFFIRM.

McKAY, Circuit Judge, dissenting:

Mr. and Mrs. Trammel have not only wasted their young lives and exploited the weaknesses of drug addicts for profit, but by their sordid activities they have led us in today's decision to establish a rule for future cases which is unsound and contrary to established precedent. In so doing they have caused us to ignore some time honored presumptions, to forego an opportunity to continue a modest contribution to the withering but vital institution of the family, and to further expand the already excessive role of the doctrine of conspiracy in undermining fundamental rules of law.

If today's opinion affected only Otis Trammel and his wife, I would view it with some concern but not with the degree of apprehension expressed in this dissent. The significance of today's decision is that it establishes a policy for *every* future case in which a prosecutor exercising his essentially unreviewable discretion decides to *accuse* a married couple as coconspirators. While the testimony in this case does not portray the defendant as a person deserving of great sympathy, *tomorrow's* case may involve a financially troubled couple who appear to be model spouses but are *accused* of conspiracy to file a false tax return. When, under the rule of this case, the wife is offered a chance to avoid a *possible* conviction by testifying against her accused husband, the harm the testimonial privilege seeks to prevent will have been done.

An analysis of the issues presented by this case requires a recognition that there are two distinct privileges based on the marital relationship. The spousal testimony privilege prevents one spouse from giving testimony adverse to the other, either voluntarily or under compulsion, without the other's consent. *Hawkins v. United States*, 358 U.S. 74, 77, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). The confidential marital communication privilege bars introduction of any confidential communications between spouses. *United States v. Apodaca*, 522 F.2d 568, 570 (10th Cir. 1975). Only the first privilege is at issue in this case.

In overturning a decision of this circuit, the Supreme Court affirmed in *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), that the testimonial privilege is the law in the federal courts. The decision sets forth the parameters of the rule. In *Hawkins* a man was accused of transporting a girl from Arkansas to Oklahoma to work with his wife as a prostitute. As in the case before us, the wife was an alleged participant in criminal activity. Unlike the record in this case, however, the evidence showed that the marriage was already in trouble and the parties were living apart. The court treated the wife's testimony as voluntary, but it reaffirmed the testimonial privilege. Reasoning that the rule is grounded on the sound policy of fostering "family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well," the Court declared that even if the marriage

was not an ideal one "the law should not *force or encourage* testimony which might alienate husband and wife, or further inflame existing domestic differences." *Id.* at 77, 79, 79 S.Ct. at 138 (emphasis supplied).

This rule has been acknowledged by federal courts in cases where the spouses were alleged coparticipants in crimes. *See, e. g., United States v. Williams,* 447 F.2d 894, 897–98 (5th Cir. 1971); *Ivey v. United States,* 344 F.2d 770, 772–73 (5th Cir. 1965); *Peek v. United States,* 321 F.2d 934, 943 (9th Cir. 1963), *cert. denied,* 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964).[1] The Tenth Circuit decision relied on by the majority, *Baker v. United States,* 329 F.2d 786 (10th Cir.), *cert. denied,* 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964), was a case in which the testimonial privilege was not even asserted by the defendant. Indeed, the majority acknowledges the general rule but urges an exception. I respond to the reasons given for this departure from established policy and precedent in the order presented by the majority.

It is urged that *Hawkins* grants a license for this court to "alter, modify or amend [the testimonial privilege] when reason and experience so demand." I am not certain that *Hawkins* provides such an expansive grant. Although I recognize that other circuits have acted to modify the privilege, *e. g., United States v. Van Drunen,* 501 F.2d 1393 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974), I also recognize that the Supreme Court has suggested that changes in the privilege are best left to Congress or to the Court itself.[2] *Hawkins v. United States,* 358 U.S. at 78, 79 S.Ct. 136. At the very least, we should be cautious about eroding the privilege on the impetus of a solitary case. In this regard,

we should be guided by the counsel of Mr. Justice Stewart, the lone doubter in *Hawkins,* who observed in concurrence that "[i]t is obvious, however, that all the data necessary for an intelligent formulation 'in the light of reason and experience' could never be provided in a single litigated case." *Id.* at 82 n. 4, 79 S.Ct. at 141. As an alternative to such a precipitate resolution of the issue, he proposed that a judicial committee be established to gather appropriate information and incorporate it into adequately considered rules. Whatever course proves ultimately wise, I do not think this case presents an adequate factual setting in which to make today's sweeping choice.

The majority insists that the federal immunity statutes, 18 U.S.C. §§ 6001–6005 (1976), provide justification for the proposed exception. These are irrelevant. They address only the Fifth Amendment rights of the declarant. The majority itself acknowledges that Congress intended by the rule a grant no broader than the Fifth Amendment itself. But the testimonial privilege extends beyond the declarant to the accused spouse, and the immunity statutes say nothing about his privilege. The immunity provisions are based on the notion that there is no injustice in compelling a witness to testify in the face of Fifth Amendment proscriptions as long as he will not be subject to prosecution for his testimony. This *quid pro quo* rationale has no application to the situation under consideration here, for no such bargain is struck with respect to the accused spouse. The immunity statutes simply provide no sound justification for fashioning a new exception to the privilege. The majority nonetheless believes that the perceived injustice of excluding immunity-enshrouded testimony is sufficient to justify an erosion of the testimonial privilege. To me this view is inconsist-

---

1. One case seems clearly contrary, but it involved testimony of events occurring prior to marriage and reflected the impact of Rule 505(c) of the proposed Federal Rules of Evidence, which excepted such testimony from the scope of the privilege. *United States v. Van Drunen,* 501 F.2d 1393 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974). Two additional cases contain language suggesting a narrowing of the privilege, but

they did not involve calling the other spouse as a witness. *United States v. Mackiewicz,* 401 F.2d 219 (2d Cir.), *cert. denied,* 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968); *United States v. Pugliese,* 153 F.2d 497 (2d Cir. 1945).

2. 18 U.S.C. § 3771 (1976) vests in the Supreme Court the power to prescribe rules of pleading, practice, and procedure for criminal cases in federal courts.

ent with the mandate of *Hawkins* and its reluctance to abandon the "persistent instincts of several centuries" that have culminated in the privilege. 358 U.S. at 79, 79 S.Ct. 136.

The majority seems to imply that something inherent in the doctrine of conspiracy itself justifies overturning the privilege. Even assuming the doubtful proposition that conspiracy has such a sweeping scope, applying the doctrine to overcome the testimonial privilege ignores significant procedural ramifications. Under present practice in this circuit, the mere *allegation* of conspiracy would permit the admission of the wife's testimony *before* the truth of the conspiracy allegation is established. In this procedural framework, the destruction of the privilege would not only effectively overturn the presumption of innocence with respect to the conspiracy charge, but it would accomplish the harm forbidden by *Hawkins* before either judge or jury has determined that there was any conspiracy at all.

I confess inability to comprehend what it is in the record of this case that supports the propositions that the Trammels did not have a "home," that they had no "family life" or that there was no "domestic harmony in the commonly accepted nature of a marital relationship." The trial court did not address these questions. Presumably the propositions reflect a view that spouses who commit crimes are incapable of achieving a harmonious marriage. I am not convinced that this view is a sound one, and I discern no support for it in the majority opinion. Even if there were evidence of domestic disharmony virulent enough to destroy family life, this would offer no justification for distinguishing the *Hawkins* precedent. The Supreme Court reached its decision in that case in the face of actual evidence of severe marital discord. 358 U.S. at 82 n. 4, 79 S.Ct. 136. It should also be remembered that the Supreme Court was not only loath to alienate husband and wife in a model marriage, but was concerned about inflaming existing differences in a stressful one as well.

I should also say a word about the conflict between the government's interest in obtaining evidentiary support for its accusations and society's interest in perpetuating a privilege intended to promote family unity. All of the arguments about evidentiary needs are equally applicable to the protections of the accused incorporated in the Bill of Rights. While not found in the Bill of Rights, the common law privilege at issue here reflects societal values similar to those expressed in that document. Today's rule articulates an unsound policy to the extent that it gives the prosecutor discretion to determine which home shall be worth saving and which home shall not have the benefit of the common law privilege. While the majority may be upholding important societal values in reaching the result it does, it seems to me that the principle established in this case strikes at one of the few remaining public supports for the institution of the home. And the home is, after all, a more important contributor to law and order than is prosecution. If the homes fail, no number of prosecutors, judges or jails could stem the tide of ensuing crime. While the Trammel home is perhaps far from an ideal one, the principle established in this case applies to all accused couples and makes us unwitting partisans in the continuing assaults on the stability of the home—the root of true stability in any society.