**In re GRAND JURY SUBPOENA
Hana KOECHER.**

**No. M 11–188 (ELP).**

United States District Court,
S.D. New York.

Dec. 11, 1984.

Rudolph W. Giuliani, Bruce A. Green, Barry Bohrer, Asst. U.S. Attys., New York City, for U.S.

Michael Kennedy, New York City, for witness.

OPINION

PALMIERI, District Judge.

Hana Koecher is being detained as a material witness in a prosecution of her husband Karl F. Koecher for acts of foreign espionage in violation of Sections 794(a) and (c) of 18 United States Code entitled "Gathering or Delivering Defense Information to Aid Foreign Government."

A criminal complaint filed against him on November 27, 1984 resulted in his arrest and incarceration without bail. No charges have been filed against Hana Koecher. She appeared before a grand jury sitting in

this district as a subpoenaed witness on November 29, 1984. After being advised of her constitutional rights, Mrs. Koecher was asked a number of questions concerning her activities which were plainly material to the investigation of which her husband was the target. She steadfastly refused to answer any of the questions asserting, after consulting with counsel, her marital privileges against disclosure of confidential communications with her husband and the giving of testimony potentially adverse to the interests of her husband.[1]

On November 29, 1984, the United States Attorney for this district moved this Court for an order directing Mrs. Koecher to testify notwithstanding her claims of privilege. It was conceded by both sides at the hearing before this Court that the questions before the grand jury involved no confidential communications between husband and wife so that the sole issue here is whether Mrs. Koecher can validly assert her marital disqualification to testify with respect to her actions at a period of time when her husband was allegedly involved in espionage activity on behalf of the Czechoslovakian intelligence apparatus.

■ The issue squarely presented is whether Hana Koecher can be compelled to give testimony potentially adverse to her husband despite her claimed disqualification.[2] At a hearing before this Court on December 4, 1984, this Court explained its

grounds for holding that her claim of privilege was invalid. The basis for this decision was, essentially, that the testimonial disqualification sought by Mrs. Koecher should not be permitted to stand as a bar to testimony concerning a joint criminal enterprise in which a husband and wife are allegedly both engaged.[3] In the face of reiterated refusal to answer the questions put to her before the grand jury, Mrs. Koecher was thereupon held to be in civil contempt of the Court in violation of 28 U.S.C. § 1826 and committed to jail for a period of 18 months or for the life of the grand jury or until such time as she decided to answer the questions, whichever period was shortest. She has remained committed since December 4, 1984.

The discussion which follows is intended to explicate and amplify the oral ruling already referred to. The law regarding the privilege against adverse spousal testimony is unclear. Two Supreme Court decisions since 1958 have dealt with the privilege, but neither decision provides an unequivocal answer to the question facing this Court. The decisions in the Second Circuit similarly yield no clear guidance. The circuits that have addressed the privilege against adverse spousal testimony have reached differing conclusions. For this reason, a brief review of the relevant jurisprudence is necessary.

1. Under Fed.R.Evid. 501, federal privilege law applies in criminal cases. The Federal courts recognize two common law privileges arising from the marital relationship. The first concerns the disclosure of confidential marital communications. The second, a testimonial privilege, permits one spouse to refrain from testifying adversely against the other.

2. The privilege against adverse spousal testimony is applicable in proceedings before the grand jury to the same extent that it is applicable in a criminal trial in federal court. *See, e.g., United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *Appeal of Malfitano,* 633 F.2d 276 (3d Cir.1980); Fed.R.Evid. 1101(d)(2).

3. The government has made an offer of proof concerning the alleged joint criminal enterprise

between Karl and Hana Koecher. F.B.I. agent Kenneth M. Geide has sworn in an Affidavit in Support of Material Witness Warrant (Government's Memorandum of Law, Exhibit A) and a Complaint (Government's Memorandum of Law, Exhibit B) that Karl Koecher made and signed a written statement reciting that he had been recruited and trained by the Czechoslovakian Intelligence Service as a spy during the years of 1962–1965, that he passed certain classified information which he obtained as an employee of the Central Intelligence Agency to the Czechoslovakian Intelligence Service during the years of 1973–1975, and that his wife, Hana Koecher, acted as a courier for the Czechoslovakian Intelligence Service delivering classified information obtained by Karl Koecher to agents of the Czechoslovakian Intelligence Service and receiving payments from the Czechoslovakian Intelligence Service in return for this information during the years of 1974–1983.

## I The Supreme Court Decisions

The common law rule regarding the marital testimonial privilege has an ancient and fascinating lineage. The development of the privilege has been extensively discussed by the Supreme Court in *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), and *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), and need not be treated in detail in this opinion.

The *Hawkins* case involved the conviction of a husband for a Mann Act violation. His wife had testified voluntarily against him over his objection. The Supreme court reversed the conviction holding that the privilege against adverse spousal had been violated. In effect, the *Hawkins* decision permitted the accused to exclude all adverse spousal testimony. Over twenty years later, the Supreme Court again addressed the claim of spousal privilege in the *Trammel* case and modified the *Hawkins* rule. The *Trammel* case concerned a husband and wife who had been jointly engaged in the illegal importation of heroin. At the husband's trial, the wife—an unindicted co-conspirator—voluntarily testified against her spouse. The 10th Circuit Court of Appeals affirmed the defendant-spouse's conviction holding that where a husband and wife were joint participants in criminal activities and where the wife gave incriminating testimony at trial under a grant of immunity, the privilege against adverse spousal testimony does not bar the witness-wife's testimony.[4] 583 F.2d 1166 (10th Cir.1978). The Supreme Court affirmed the conviction—but on a different theory. The Court ignored the "joint participants" theory articulated by the circuit court, and instead limited its holding to vesting the right to assert the privilege solely in the witness-spouse. In reaching this conclusion, the Supreme Court stated that testimonial exclusionary rules and privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'." *Trammel*, 445 U.S. at 50, 100 S.Ct. at 912 (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J. dissenting). A careful reading of the Court's opinion reveals the "discomfort" with which the Court viewed the privilege. *In re Grand Jury Matter*, 673 F.2d 688, 697 (3rd Cir.), *cert. denied, sub nom., United States v. Doe*, 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982) (Adams, J. dissenting). The Court reviewed the sharp criticism directed towards the privilege against adverse spousal testimony (*Trammel*, 445 U.S. at 44–45[5], 100 S.Ct. at 909–910) and the steady erosion of the privilege both in state jurisdictions (*Id.* at 48–49, nn. 9–10, 100 S.Ct. at 911–912 nn. 9–10) and in the federal courts (*Id.* at 46 n. 7, 100 S.Ct. at 910 n. 7). It noted that Fed.R.Evid. 501,

> "acknowledges the authority of the federal courts to continue the evolutionary development of testimonial privileges in federal criminal trials governed by the principles of the common law as they may be interpreted *in the light of reason and experience....* In rejecting the proposed [Rule 505] and enacting Rule 501, *Congress manifested an affirmative intention not to freeze the law of privilege.*"

*Id.* at 47, 100 S.Ct. at 910 (emphasis added). Acting on this intention, the Court stated that the appropriate analysis in a case involving the testimonial privilege is to

---

4. On appeal, the government did not argue that a grant of immunity had to be involved. The government argued that joint participation in criminal activity was sufficient to justify an exception to the privilege against adverse spousal testimony. *See* Brief for Respondents at 2, 8 and 25–29.

5. The Second Circuit had also noted the "vociferous criticism which has characterized the rule as an archaic residue of discarded dogma and an attempt to foster familial harmony which is often more apparent than real." *United States v. Fisher,* 518 F.2d 836, 839 (2d Cir.), *cert. denied,* 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975).

"decide whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice."

*Id.* at 51, 100 S.Ct. at 912. While finding it unnecessary to abandon the rule completely, (*See* Respondent's Brief at 6 n. 3), the Court concluded that the privilege should be severely constricted.

## II  *The Second Circuit Decisions*

While the Second Circuit has not expressly adopted the joint participants exception to the privilege in question, it has leaned very far, by way of *dictum,* in that direction. In fact, the Fifth Circuit went so far as to say that the Second Circuit had adopted the joint participants exception to the privilege against adverse spousal testimony. *United States v. Mendoza,* 574 F.2d 1373, 1381 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978). But the case which it cited for the proposition, *United States v. Cotroni,* 527 F.2d 708 (2d Cir.1975), contained an express reservation on the point. The Second Circuit opinion stated, at 712–13:

"We therefore do not reach the question whether they [conversations between husband and wife] were admissible because ... both spouses were participants in patently illegal activity."

*Citing United States v. Kahn,* 471 F.2d 191 (7th Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)—a case discussed below.

An earlier Second Circuit case, *United States v. Mackiewicz,* 401 F.2d 219 (2d Cir.), *cert. denied,* 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968), decided twelve years before the Supreme Court's decision in *Trammel,* expressed approval of the common law rule against adverse spousal testimony although its holding was that extra-judicial statements by one spouse were not barred by the testimonial privilege.

In an even earlier case in which Judge Learned Hand wrote for the Second Circuit, it was held that a wife's extra-judicial statements to a police officer may be admitted in a criminal prosecution of the husband if the spouses were involved in a joint criminal undertaking. *United States v. Pugliese,* 153 F.2d 497, 500–01 (2d Cir. 1945).

At least one judge of this Court has recognized a joint participants exception to the related privilege protecting confidential marital communications in reliance upon the Fifth Circuit decision in *Mendoza,* 574 F.2d at 1381. *See United States v. Shipp,* 578 F.Supp. 980, 991 (S.D.N.Y.1984) (Weinfeld, J.).

In light of the absence of a clear holding concerning a joint participants exception to the privilege against adverse spousal testimony, this Court concludes that the issue is still an open question in the Second Circuit.

## III  *The Other Circuits*

The circuit courts that have addressed the issue of a joint participants exception to the privilege against adverse testimony have reached differing conclusions. Both the Seventh and Tenth Circuits have explicitly adopted a joint participants exception to the privilege against adverse spousal testimony. The Tenth Circuit recognized the exception in *United States v. Trammel,* 583 F.2d 1166 (10th Cir.1978), *aff'd on other grounds,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the Seventh Circuit, in *United States v. Van Drunen,* 501 F.2d 1393 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974), and *United States v. Clark,* 712 F.2d 299 (7th Cir.1983). The Third Circuit refused to recognize such an exception in *Appeal of Malfitano,* 633 F.2d 276 (3d Cir.1980), and in *In re Grand Jury Matter,* 673 F.2d 688 (3d Cir.), *cert. denied, sub nom. United States v. Doe,* 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982).[6] Additionally, at least five circuits have adopted the joint partici-

---

6. The Fifth Circuit has declined to reach the issue of a joint participants exception. *See United States v. Archer,* 733 F.2d 354, 358–59 and n.

3 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 198, 83 L.Ed.2d 130 (1984).

pants exception to a related privilege: the confidential marital communications privilege.[7]

While this Court concurs in the conclusion of both the Seventh and Tenth Circuits that the testimonial privilege may not be successfully asserted when both spouses have engaged in the underlying criminal activity, it recognizes certain weaknesses in the decisions from these circuits.

Both *Trammel* and *Van Drunen* involved witnesses who voluntarily testified against their spouses. Given the Supreme Court's conclusion in *Trammel* that the privilege may be claimed only by the witness-spouse, the holdings in *Trammel* and *Van Drunen* are of questionable vitality. In addition, both *Trammel* and *Clark* adopted the twin rationales for the exception articulated in *Van Drunen*. The *Van Drunen* court presented two reasons for the exception. First, the goals underlying the privilege do not "justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or co-conspirator he is creating another potential witness." Second, where both spouses have engaged in criminal activity, there is little reason to encourage the preservation of a marriage which is unlikely to be "an important institution contributing to the rehabilitation of the defendant spouse." *See Van Drunen*, 501 F.2d at 1396–97; *Trammel*, 583 F.2d at 1169–70; *Clark*, 712 F.2d at 301.

Prior to *Trammel*, the first argument presented by *Van Drunen* was a highly persuasive one. A person who recruited his spouse into criminal activities could be absolutely certain that—barring divorce[8] —his partner in crime could never testify against him. The *Hawkins* rule gave the defendant the power to prevent his spouse's testimony—even if she was willing to take the stand. However, since *Trammel*, a defendant can no longer prevent his spouse from voluntarily testifying against him. The assurance that the *Van Drunen* court spoke of is thus no longer absolute—it accrues only to a criminal with a loyal spouse.

The second reason advanced by *Van Drunen* in support of the joint participants exception was that the "rehabilitative effect of the marriage, which in part justifies the privilege, is diminished when both spouses are participants in the crime." *United States v. Clark,* 712 F.2d 299, 301 (7th Cir.1983), citing *Van Drunen* at 1397. Neither *Clark* nor *Van Drunen* cited any authority for the proposition that the rehabilitative effect of a marriage is a justification for the privilege against adverse spousal testimony, and this Court can find none. "Modern views generally point to one of two major policies behind [the privilege's] continued existence: prevention of dissention between spouses which might result from testimony of one against the other, and society's 'natural repugnance' at condemning a person on the compelled testimony of his or her spouse." Ruetlinger, *Policy, Privacy and Prerogatives: A Critical Examination Of The Proposed Federal Rules of Evidence As They Affect Marital Privilege*, 61 Calif.L.Rev. 1353, 1359–60 (1973). *See,* 8 Wigmore, *Evidence* § 2228 at 216–18 (McNaughton rev. 1961). Given the clear instruction of the Supreme Court

---

**7.** *See, e.g., United States v. Kapnison,* 743 F.2d 1450 (10th Cir.1984); *United States v. Neal,* 743 F.2d 1441 (10th Cir.1984); *United States v. Broome,* 732 F.2d 363 (4th Cir.1984); *United States v. Ammar,* 714 F.2d 238 (3d Cir.1983), *cert. denied sub nom., Stillman v. United States,* — U.S. ——, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Entrekin,* 624 F.2d 597 (5th Cir.1980), *rhg. denied,* 629 F.2d 1350, *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981); *United States v. Mendoza,* 574 F.2d 1373 (5th Cir.) *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Kahn,* 471 F.2d 191 (7th Cir.1972), *rev'd on other grounds,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). *See also United States v. Shipp,* 578 F.Supp. 980 (S.D.N.Y.1984) (Weinfeld, J.). The Ninth Circuit will shortly confront this issue in *In re Hugle,* no. 84–1228.

**8.** *See, e.g. Pereira v. United States,* 202 F.2d 830, 834 (5th Cir.1953).

that evidentiary privileges in general [9] and this privilege in particular [10], are to be strictly construed, this Court is reluctant to seek out new rationales for the privilege.

Opposed to the position of the Seventh and Tenth Circuits is that of the Third Circuit. In *Appeal of Malfitano,* 633 F.2d 276 (3d Cir.1980) and *In re Grand Jury Matter,* 673 F.2d 688 (3d Cir.), *cert. denied, sub nom. United States v. Doe,* 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), the Third Circuit rejected the notion that where both spouses are allegedly involved in criminal activity the privilege against adverse spousal testimony does not apply. That Court has held, however, that there is a joint participants exception to the related privilege protecting confidential marital communications. *See United States v. Ammar,* 714 F.2d 238 (3d Cir.), *cert. denied sub nom., Stillman v. United States,* — U.S. ——, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). In *Ammar,* the Court attempted to harmonize these positions by arguing that the privilege against adverse spousal testimony is designed to protect the marriage (and that marriages involving criminal activity are no less worthy than other marriages of the protection), while the confidential marital communications privilege is designed to protect the communications themselves. *See Ammar,* 714 F.2d at 257–58; *Malfitano,* 633 F.2d at 279 n. 5. The Court wrote:

> "[O]ther circuits have recognized [a joint participants] exception to the marital communications privilege, on the ground that such communications are not worthy of protection. [cites]."

Can it be that the *Ammar* court misapprehended the motivation of the other circuits in recognizing a joint participants exception to the confidential marital communications privilege? In all three of the cases cited by *Ammar,* the circuit courts explicitly stated that where both spouses are involved in criminal activity, admitting the evidence would be unlikely to offend

marital harmony. *United States v. Price,* 577 F.2d 1356, 1365 (9th Cir.1978), *cert. denied, sub nom. Mitchell v. United States,* 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979); *United States v. Mendoza,* 574 F.2d 1373, 1380 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Kahn,* 471 F.2d 191, 194 (7th Cir.1972), *rev'd on other grounds,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

In light of the rationale articulated by the Fifth, Seventh, and Ninth Circuits this Court questions the validity of the Third Circuit's position. A set of evidentiary rules which permits the introduction of confidential communications between husband and wife but bars the testimony of one against the other seems illogical if the goal of the rules is to preserve and protect marital harmony.

## IV  *Discussion*

In the absence of precedent in the Second Circuit, and in view of the conflict of authority between the Third, Seventh, and Tenth Circuits, this Court is mindful of its heavy responsibility in ploughing new ground. We note, in passing, that the Supreme Court has twice declined the opportunity to decide the very question presented to this Court. *Trammel,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), Brief for Respondents at 2, 8, 25–29; *In re Grand Jury Matter,* 673 F.2d 688 (3d Cir.), *cert. denied sub nom., United States v. Doe,* 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), Petition for Certiorari at 6–7.

In *Trammel,* the Supreme Court announced that the appropriate analysis in a case involving the testimonial privilege is to "decide whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." 445 U.S. at 51, 100 S.Ct. at 912.

---

**9.**  *See United States v. Nixon,* 418 U.S. 683, 709–710, 94 S.Ct. 3090, 3108–3109, 41 L.Ed.2d 1039 (1974).

**10.**  *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912.

■ As discussed earlier, there are two interests underlying the privilege against adverse spousal testimony: (1) prevention of dissension between spouses which might result from testimony of one against the other; and (2) society's "natural repugnance" at condemning a person on the compelled testimony of his or her spouse.

To what extent does the recognition of a joint partnership exception that permits the government to compel a person to testify against his or her spouse defeat these policies?

It should be noted at the outset that this Court is not writing on a blank slate. The privilege is no longer the categorical and simple rule that it once was. The federal courts have recognized exceptions to the privilege for cases in which one spouse commits a crime against the other, *Wyatt v. United States*, 362 U.S. 525, 526, 80 S.Ct. 901, 902, 4 L.Ed.2d 931 (1960); one spouse commits a crime against the other's property, *Herman v. United States*, 220 F.2d 219, 226 (4th Cir.1955); one spouse commits a crime against either's children, *United States v. Allery*, 526 F.2d 1362 (8th Cir.1975); the marriage is entered into fraudulently, *United States v. Apodaca*, 522 F.2d 568 (10th Cir.1975); the marriage is beyond preservation, *United States v. Fisher*, 518 F.2d 836 (2d Cir.), *cert. denied* 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975); the acts about which the witness-spouse testified occurred prior to the marriage, *United States v. Clark*, 712 F.2d at 302; the witness spouse's statements are made outside of the courtroom, *United States v. Mackiewicz*, 401 F.2d at 225; and where the government has conferred use-fruits immunity on the witness' spouse, *United States v. Doe*, 478 F.2d 194, 195 (1st Cir.1973).

The law of the State of New York, where this Court sits, does not recognize any privilege against adverse spousal testimony[11].

The laws of marriage and domestic relations are concerns traditionally reserved to the states. *See Trammel*, 445 U.S. at 50, 100 S.Ct. at 912. It seems anomalous that a federal court serving the same community should be more zealous in weighing the attributes of spousal relationships than the state courts themselves.

As we discussed earlier at 12, at least three circuits have held that where spouses are jointly engaged in criminal activity, the admission of a spouse's testimony is unlikely to cause marital dissension. *See Price*, 577 F.2d at 1365; *Mendoza*, 574 F.2d at 1380; and *Kahn*, 471 F.2d 194.

■ The Second Circuit has clearly adopted the position that a person may be incriminated by the extra-judicial statements of his spouse. *See United States v. Mackiewicz*, 401 F.2d at 225; *United States v. Pugliese*, 153 F.2d 497, 500–01. *A fortiori*, a spouse's extra-judicial statements can also be used to impeach the defendant. *See United States v. Neal*, 743 F.2d 1441, 1448 (10th Cir.1984) (Logan, J. concurring). *Cf. Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (statements inadmissible in prosecution's case in chief because of *Miranda* violation may be used for impeachment purposes if defendant testifies). Therefore, the mere fact that the spouse is an instrument of the defendant's incrimination is not so repugnant as to require exclusion of the testimony. And where both spouses have been granted use-fruits immunity, a person may be compelled to testify against his spouse. *See United States v. Doe*, 478 F.2d 194, 195 (1st Cir.1973); *In re Grand Jury Matter*, 673 F.2d 688, 694 n. 12 (3d Cir.), *cert. denied*, 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). *Cf. Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir.1977), *cert. denied*, 439 U.S.

---

11. N.Y. CPLR § 4512 provides:

"Except as otherwise expressly prescribed, a person shall not be excluded or excused from being a witness ... because he is a ... spouse of a party."

(For an example of an exception to this rule, *see* N.Y. CPLR § 4502(a) which disqualifies a person from testifying against his spouse in an adultery action except as to certain limited matters.) N.Y.Crim.Pro.L. § 60.10 makes this rule applicable in criminal cases.

820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) (interrogatories).

■ In conclusion, this Court is persuaded that the recognition of a joint participants exception to the privilege against adverse spousal testimony will not seriously infringe upon the goals underlying that privilege. Furthermore, this Court is reluctant to interfere with the sweeping powers of the grand jury in its investigative functions. *United States v. Calandra,* 414 U.S. 338, 350, 94 S.Ct. 613, 621, 38 L.Ed.2d 561 (1974); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The fair and expeditious administration of the criminal laws requires us to be extremely circumspect in dealing with the claim of a testimonial disqualification by a spouse who is an unwilling witness.

The frequently quoted statement of Jeremy Bentham, in expressing his opposition to the marital testimonial privilege over a century and a half ago, retains its validity today:

> "Let us, therefore, grant to every man a license to commit all sorts of wickedness, in the presence and with the assistance of his wife: let us secure to every man in the bosom of his family, and in his own bosom, a safe accomplice: let us make every man's house his castle; and, as far as depends upon us, let us convert that castle into a den of thieves."

J. Bentham, 5 *Rationale of Judicial Evidence,* 332, 340 (1827), *cited in* 8 J. Wigmore, *Evidence,* § 2228 at 218 (McNaughton rev. 1961).

This Court adheres to its decision of December 4, 1984 holding Hana Koecher in civil contempt of court in violation of 28 U.S.C. § 1826.