In the Matter of Grand Jury Empanelled October 18, 1979.

Appeal of Witness (MALFITANO).

No. 80–1627.

United States Court of Appeals, Third Circuit.

Argued May 20, 1980.

Decided June 26, 1980.

J. Barry Cocoziello (argued), Podvey & Sachs, Newark, N.J., for appellant.

Robert J. Del Tufo, U. S. Atty., Samuel A. Alito, Jr., Asst. U. S. Atty. (argued), Newark, N.J., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

OPINION OF THE COURT

SEITZ, Chief Judge.

Ruth Malfitano appeals from an order of the district court holding her in contempt for refusing to answer questions before a federal grand jury based on a claim of the privilege against adverse spousal testimony.

I.

A grand jury was empanelled in October of 1979 to investigate an alleged attempt by appellant's husband, Samuel Malfitano, and others to secure a loan from the Teamsters Union Pension Fund. The government believes that there was a conspiracy involving appellant's husband, other individuals, and several corporate entities to secure this loan by paying a 10% kickback in violation of 18 U.S.C. §§ 1341, 1343, 1954, 371, and 1962.

The appellant is the secretary of five of these corporations, and her husband is the president of the same five.

Pursuant to the investigation, subpoenas were served on appellant and her husband. In addition to being served in her individual capacity, the appellant was served in her capacity as secretary to the corporations in question. After receiving the subpoena, the appellant had her attorney inform the United States Attorney by letter that she intended to invoke a marital testimonial privilege as to any questions asked before the grand jury. The appellant's husband also was notified by letter that he was a target of the grand jury.

On May 1, 1980, the appellant appeared before the grand jury and was asked questions dealing with two topics. The first series of questions, directed to her as corporate secretary, concerned telephone records for the corporations during the period of the alleged conspiracy. The second set of questions, which were addressed to her in an individual capacity, concerned a meeting in June 1975 presumably attended by the appellant and a number of other persons. The questions were designed to discover whether the alleged kickback scheme had been discussed at this meeting. After consulting with her attorney, the appellant refused to answer either set of questions on the ground of marital privilege.

After proceedings before it, the district court ruled that appellant's claim of privilege was invalid and ordered her to answer the questions before the grand jury. When she again refused, the court then found her in contempt and ordered her confined for the term of the grand jury or until she agreed to testify.[1] This appeal followed.

## II.

■ Under the federal rules of evidence, the question of whether a privilege is available is to be determined by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R. Evid. 501. In this case we are concerned with the privilege against adverse spousal testimony.[2] The crux of this privilege is that a person may not be forced to be a witness against his or her spouse in a criminal proceeding.

■ While many of the original justifications for the privilege are no longer valid, recently the Supreme Court in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), decided that the privilege against adverse spousal testimony remains a viable principle of federal law and only modified the privilege by vesting it solely in the testifying spouse. *See id.*, 100 S.Ct. at 914. Moreover, the privilege continues to apply to grand jury proceedings. *See, e. g., United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *In re Snoonian*, 502 F.2d 110 (1st Cir. 1974); Fed.R.Evid. 1101(d)(2).

■ Here, appellant has invoked the privilege, which is the proper course under *Trammel*. Moreover, all of the questions would seem to implicate her husband. He is the president of all of the corporations involved, and the questions about the June 15 meeting would implicate him either if he attended it or because it was held at one of the corporate offices. Indeed, the government has not argued that the testimony would not implicate appellant's husband. Thus unless there is something that indicates that the rationale for the privilege does not apply here, reversal of the contempt citation is required.

The main rationale for the privilege today is that it protects the marriage from the discord that occurs when one spouse testifies against the other. *See Trammel*,

1. The court also denied the appellant's application for a stay of the contempt order pending appeal. The district court did, however, grant a stay pending action by a panel of this court provided that notice of appeal was filed no later than 5 p. m. on May 2, 1980. This court extended the stay by order dated May 15, 1980, pending disposition of this appeal.

2. There is another privilege involving confidential marital communications, but we are not presented with any question concerning it.

*supra.* The major justification offered by the government for not according appellant the privilege is the fact that she was allegedly involved in the criminal acts of her husband.[3] This position is supported, either by dictum or holding, in a number of cases. *E. g., United States v. Trammel,* 583 F.2d 1166 (10th Cir. 1978), *aff'd on other grounds,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The question therefore in considering the proposed exception is whether such circumstances mean that the rationale of the privilege is not served in the present case. A rule that abrogates the privilege where the spouses have been partners in crime rests on a variety of possible premises, none of which justify an exception.

An initial possibility rests on a factual assessment of such marriages: where marriage partners are involved in crime, it is more likely that the marriage is unstable. If such marriages are usually beyond hope, there is no need in fact to protect them.

There is nothing in the record or otherwise to indicate that marriages with criminal overtones disintegrate and dissolve. The spouses in fact may be very happy. Moreover, the fact that under *Trammel* the witness spouse is the holder of the privilege completely satisfies any concern that the privilege not be extended to marriages that in fact need no protection. The Supreme Court explicitly relied on the fact that if the witness spouse is willing to testify, then the marriage probably is beyond salvage. The Court seems to have assumed that this provides adequate safeguards insofar as the marriage has fallen apart due to the criminal activity of at least one of the spouses, and the same would seem to be true where both may be involved.

As distinguished from the notion that the marriage may not need protection, a second premise underlying this proposed exception is that marriages with partners that engage in crime should not be protected. Argu-

ably, such marriages are bad or otherwise not deserving of any protection through evidentiary rules. Such a premise is inappropriate for several reasons.

First, the traditional rule with adverse spousal testimony has been that all valid marriages, even those with existing domestic difficulties, should be protected. The theory behind this rule is that where the marriage is unstable, it should not be endangered further by pitting the spouses against one another in criminal proceedings. *See Hawkins v. United States,* 358 U.S. 74, 78–79, 79 S.Ct. 136, 139, 3 L.Ed.2d 125 (1958).

We fail to see how the source of that instability, whether it be normal domestic difficulties or the spouses' joint criminal activity, makes any difference in applying the privilege. We are aware of no public policy requiring that a marriage be dissolved when the partners engage in crime. As long as neither state nor federal substantive law attaches any such penalty to joint crimes of spouses, it is inappropriate to use evidentiary rules to impose such a penalty.

Second, it is not entirely beyond doubt that such marriages are not deserving of protection. The assumption seems to be that because of what may be an isolated criminal act, the marriage has no social value whatsoever. This may not be true. Marriage is a social bond that not only ties the individuals together but also can tie the individuals into certain social norms and behavioral patterns. Thus the marriage may well serve as a restraining influence on couples against future antisocial acts and may tend to help future integration of the spouses back into society.

We make these observations not to say that one view or the other is valid. Rule 501 requires us to look at common experience in determining the contours of the various privileges. We merely find sufficient uncertainty to counsel against assum-

---

**3.** Although appellant is not a target of the grand jury, the government filed an affidavit stating: "I have received information from a cooperating witness in this matter indicating that Ruth Malfitano is a co-conspirator by reason of her knowledge of the object of the conspiracy and her facilitation of the attainment of the object of the conspiracy."

ing that such marriages never have any social value.

Even if it might be inappropriate to assume that such marriages are not deserving of protection in general, if courts were able to assess the social utility of particular marriages the proposed exception to the privilege might be justifiable. However, we are not confident that courts can assess the social worthiness of particular marriages or the need of particular marriages for the protection of the privilege. *Compare United States v. Brown*, 605 F.2d 389, 396 (8th Cir.) (marriage was of short duration and so unstable as to not deserve the protection of the privilege), *cert. denied*, 444 U.S. 972, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979), *with Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir. 1977) (marriage was of such long duration and so stable that protection not needed), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). Indeed, here we have absolutely no way of knowing what type of marriage appellant and her husband have because there was no inquiry into the question.

This is not to say that courts should not inquire into whether the marriage is valid and not some sham or fraud, something that is not in question here. Nevertheless, given the theoretical and empirical difficulties of assessing the social utility of such marriages, either in general or in each case, we do not think that courts should "condition the privilege . . . on a judicial determination that the marriage is a happy or successful one." *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir. 1978).

Finally, the very nature of conspiracy cautions against this exception, no matter what procedural requirements are imposed on the government's claim that the witness-spouse is a partner in the criminal conduct. Where the spouse does not want to testify, the only way to get her testimony will be to accuse her. This will put pressure on her to testify, perhaps at the expense of her spouse, to protect herself.[4] Given the intimacy of marriage and the fact that conspiracy is a rather flexible concept, it will be quite easy to allege that the spouses are partners. Ironically, the closer the marriage, the more likely it will appear that both spouses are involved. Here, even assuming the prosecutor is more specific and this does not endanger the investigation, there will not be much difficulty in asserting that the appellant is involved even though she is not even a target of the grand jury. Thus recognition of an exception where it can be said that both spouses are involved will tend to undermine the marriage precisely in the manner that the privilege is designed to prevent.[5]

As an alternative justification for the exception, the district court seemed to think that because the government has promised not to use appellant's testimony in future proceedings against her husband, the appellant has no reason to invoke the privilege. Even if appellant's testimony is not used in later proceedings, it seems there is nothing to prevent this grand jury from considering the appellant's testimony in deciding whether to indict. There is no indication that the government intends to somehow sever the husband's indictment from that of the other defendants to ensure that the grand jury does not use appellant's testimony against her husband. *Cf. United States v. Fields*, 458 F.2d 1194 (3d Cir. 1972) (error

4. It is important to distinguish the spousal privilege and the privilege against self incrimination. Although the fifth amendment removes pressure on the spouse to the extent the testimony would incriminate her, it would not remove any pressure to the extent she can incriminate her husband without incriminating herself. That is the pressure designed to be avoided by the spousal privilege and is all we are considering in this context.

5. Nor is an analogy to the attorney-client privilege appropriate. It is true that communica-

tions between the attorney and his client concerning future crimes are not protected—but that is because with the attorney-client privilege it is the fact of communication that is protected and such communications do not deserve protection. In this regard, the difference between the confidential communication privilege and the adverse spousal testimony privilege becomes significant. With the adverse spousal testimony privilege, it is not disclosure of communications that is protected but rather the impact of the testimony on the marriage.

to not sever husband's trial from that of co-defendants where wife's testimony given at joint trial; error harmless because wife's testimony not damaging to husband), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1973).

The fact that the grand jury will consider appellant's testimony and possibly indict her husband on the basis of it will put a strain on their marriage. The husband will be subjected to a trial due to an indictment based in part on appellant's testimony. This is no less of a strain on the marriage than if the appellant testified at his trial.[6]

Thus *In re Snoonian*, 502 F.2d 110 (1st Cir. 1974), relied on by the parties, is distinguishable. There, a husband was required to testify before a grand jury where the government promised that his testimony would not be used against his wife. In *Snoonian*, the witness' spouse was not a target, and the government expressly promised that "this Grand Jury has no intent to prosecute your wife on the basis of your testimony here." *Id.* at 111. Contrary to the present case, it was clear that the grand jury before which the husband would testify would not use his testimony to indict his spouse.

■ Our conclusion that there is no exception to the privilege here requires us to consider whether the appellant waived the privilege. When the appellant refused to testify, she was brought into the judge's chambers and asked the questions. The judge then ordered her to answer, and she did. The district court seemed to feel that this constituted a waiver of the privilege.

No matter what standard of waiver is applied, the waiver must be knowing. The appellant steadfastly invoked the privilege except for this one instance. The appellant's affidavit, which the government does not dispute, states that she was born in

Germany and has a hard time understanding English. Moreover, this was the first time she ever had contact with judicial proceedings in America. She states that she thought she had to answer the judge and that answering would not affect her right to continue to refuse to testify before the grand jury. All the circumstances show that the appellant did not make a knowing, intelligent waiver of the privilege.

In any case where a proposed exception to a privilege is asserted there must be a balancing of the need for the evidence against the validity of the privilege. On the one hand, we fail to see how the grand jury creates a qualitatively greater need for the evidence than does a normal criminal trial. The fact that we are involved with a grand jury should not obscure the fact that the reasoning of the government is not confined to that particular type of legal proceeding. On the other side of the balance, we realize the possibility that the social benefit of the privilege may be minimal and that it could be dispensed with without serious erosion of marriages. Nevertheless, *Trammel* chose not to abolish the privilege but rather to modify it. As long as the privilege remains law, the exceptions to it must be based either on verifiable assumptions or on ascertainable factual standards. Because we find neither here and because we believe that the ruling of the district court undermines the purpose of the privilege, we will reverse the appellant's contempt citation.

### III.

The order of the district court finding the appellant in contempt will be reversed.

GIBBONS, Circuit Judge, concurring.

I join in Chief Judge Seitz's opinion to the extent that it recognizes the continued viability of the marital testimonial privilege

---

6. It is true that applying the privilege denies the grand jury evidence, but that is the inevitable result of applying the privilege to grand jury proceedings. In any event, the privilege is not absolute: it does not shield all testimony nor does it bar procedures that may protect the spouse from the effect of the testimony. *See* *generally* 8 Wigmore on Evidence §§ 2230–2240 (McNaughton rev. ed. 1961). The parties have not argued these issues, and we express no view on them except to point out that applying the privilege may not hamper the government as much as it suggests.

and the applicability of that privilege to spouses who are allegedly co-conspirators. Moreover, I join in the Chief Judge's rejection of the Government's contention that the privilege was waived by this witness. I reject, however, his conclusion that the contempt citation must be reversed. For reasons to be explained herein, I recognize that a coercive contempt sanction may be imposed in this case and that therefore the order holding Mrs. Malfitano in contempt should be vacated and remanded to the district court.

If I were free to do so I would hold that the rule of *Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), recognizing a privilege of one spouse not to testify against the interest of the other, should be overruled, because it is based upon a supposititious impact of such testimony upon that interspousal relationship in the future, which impact has no support in any behavioral science evidence. *See* Rosenberg, *The New Looks in Law*, 52 Marq. L.Rev. 539, 541 (1969). The Supreme Court, presented with the opportunity to reconsider the *Hawkins* rule when Rule 501 of the Federal Rules of Evidence was adopted, chose, instead, to continue to rely on this belief that compelled testimony by one spouse against the other would have an adverse impact on their marriage. Thus in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), it held that so long as the spouse whose testimony was sought asserted the privilege it should be recognized. *Id.*, 100 S.Ct. at 913–14. Although I believe that the rationale of *Trammel v. United States* is empirically unfounded, I agree with Chief Judge Seitz that it is fully applicable to spouses who, while married, join in the commission of a crime and that an exception for marriage relationships used to advance criminal activities cannot be reconciled with that rationale. Such an exception would always apply, for withholding inculpating testimony will always advance criminal activities in the sense that it will tend to make prosecution more difficult. That is the only sense in which the privilege is relevant, and its operation in that sense is no different whether the spouse was an active participant or a mere witness. Moreover, the marriage relationship itself does not advance the accomplishment of the criminal objects; a close friend or secretary could do as much to advance those objects.

In this case the district court, in ordering Mrs. Malfitano to testify, recognized the marital testimonial privilege. The court held that she could not assert the privilege, however, in order to withhold testimony that would be adverse to corporations and third parties. That holding is undoubtedly sound. *In re Snoonian*, 502 F.2d 110, 112 (1st Cir. 1974). The transcript of the proceedings in the district court makes it clear that the court proceeded upon the assumption that her testimony, and the fruits thereof, could not be used in any subsequent prosecution of her husband. In this court the Government endorses that position, and the authorities on which the district court relied in announcing it. Brief for Appellee at 10–14; *see Government of the Virgin Islands v. Smith*, 615 F.2d 964, 970–74 (3d Cir. 1980); *United States v. Herman*, 589 F.2d 1191, 1204 (3d Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). Those cases recognize that the court has inherent power to grant use-fruits immunity for the purpose of obtaining testimony favorable to the defense which is otherwise unavailable. The Government contends, and I agree, that the court has no less inherent power to confer use-fruits immunity in order to obtain testimony which by virtue of the assertion of the marital testimonial privilege would be otherwise unavailable. The Government urges that because the court assumed Mrs. Malfitano's testimony could not be used against her husband, the order directing her to testify before the grand jury was valid and the contempt judgment should be affirmed.

While I accept the Government's argument that the grant of use-fruits immunity so as to insulate Mrs. Malfitano from testifying against her husband is a complete answer to the claim of marital privilege. I do not agree that the contempt judgment can be affirmed. It is undisputed that Mr.

Malfitano is a target of the grand jury investigation in which Mrs. Malfitano's testimony is sought. The marital testimonial privilege is available not only at trial but in a grand jury proceeding as well. *Blau v. United States*, 340 U.S. 332, 333–34, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951). If the testimony of the spouse adverse to the other's interest, is used at the trial of a co-defendant, a severance is required in order effectively to insulate the factfinder from the privileged information. *United States v. Fields*, 458 F.2d 1194, 1198–99 (3d Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1973). There is no effective means of insulating the grand jury from the privileged information other than a requirement that the Government seek any indictment of the husband, growing out of the incidents as to which the wife testifies, before a different grand jury.

The order holding Mrs. Malfitano in contempt should be vacated. If an order is entered directing that the Government seek her husband's indictment before another grand jury, and that trial on any such indictment will be severed from that of co-defendants indicted by the grand jury before which Mrs. Malfitano's testimony is sought, she may be ordered to testify and held in contempt if she refuses.