**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard CLARK, Defendant-Appellant.**

**No. 82–2082.**

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1983.
Decided July 14, 1983.

**300**

Mary A. Martin, Chicago, Ill., for defendant-appellant.

James R. Ferguson, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.[*]

FLOYD R. GIBSON, Senior Circuit Judge.

Richard Clark appeals the district court's judgment finding him in criminal contempt of court for refusing to testify at the trial of his wife. We affirm the judgment of the district court.

### I. *Facts*

In June 1981 Clark and his wife, Christine Kunkel, were indicted for stealing money from a savings and loan in Evanston, Illinois. The government charged that Kunkel, an employee of the savings and loan, set up an account in the name of "Eric Westberg," an alias of Clark. Kunkel allegedly caused two cashier's checks to be drawn on the account in the name of two of Clark's friends, and then the friends gave the money to Clark. Clark and Kunkel were not yet married at the time of these transactions. The district court severed the trials of Clark and Kunkel.

Clark testified at his own trial that he earned the money deposited in the Eric Westberg account after his release from a

Wisconsin prison. He explained that he had used an alias to avoid detection by Wisconsin parole officials. Clark also testified that Kunkel was not involved in opening the account. Clark was convicted after a bench trial of violating 18 U.S.C. § 2113 (1976). He received a two-year sentence. Kunkel received a jury trial at which Clark did not testify. After the jury failed to reach a verdict, the district court declared a mistrial. At Kunkel's retrial the government subpoenaed Clark as a hostile witness, believing that the incredibility of his testimony would bolster the government's case. Clark refused to testify at Kunkel's trial. Clark based his refusal on the right of a witness-spouse to refuse to testify adversely against his or her accused spouse in federal court. *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). The district court found the privilege did not apply to Clark and held him in criminal contempt. Clark was sentenced to five months, twenty-nine days imprisonment to run consecutively with his two-year sentence. Clark now appeals. Kunkel was convicted under 18 U.S.C. § 657 (1976).

### II. *Analysis*

■ The district court found three reasons why the privilege not to testify against a spouse did not apply to Clark. The first was that the privilege does not apply when the husband and wife were joint participants in the underlying offense. Second, the privilege does not apply to testimony about conduct which took place before the marriage. Third, the privilege does not apply when the testimony would be facially exculpatory, even if its effect is adverse to the spouse. We must affirm the contempt judgment if any one of the three reasons relied on by the district court is applicable.

#### A. *Joint Participants*

The exception which most clearly defeats Clark's assertion of the privilege not to testify against his spouse is the joint participants exception. This court expressly rec-

---

[*] The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ognized the joint participants exception in *United States v. Van Drunen,* 501 F.2d 1393, 1397 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974). The court stated: "Today's holding ... limits the privilege to those cases where it makes most sense, namely, where a spouse who is neither a victim *nor a participant* observes evidence of the other spouse's crime." *Id.* (emphasis added).

The *Van Drunen* court gave two reasons for creating the joint participants exception. The first was that the goal intended to be served by the privilege, *i.e.,* preventing either spouse from committing the "unforgivable act" of testifying against the other in a criminal case, did not justify assuring a criminal that he or she could enlist the aid of a spouse in a criminal enterprise without fear that by recruiting an accomplice the criminal was creating another potential witness. *Id.* at 1396. The second reason was that the rehabilitative effect of a marriage, which in part justifies the privilege, is diminished when both spouses are participants in the crime. *Id.* at 1397.

Clark argues that *Van Drunen* does not apply to him because the real purpose of the joint participants exception is to prevent sham marriages and there was no evidence his marriage is a sham. However, there is nothing in the *Van Drunen* opinion suggesting that the possibility of a sham marriage had anything to do with the creation of the joint participants exception. *See id.* at 1396–97. The only reasons for the exception were the two mentioned above. That the absence of a sham marriage rationale in the opinion is not an oversight is shown by the fact that the *Van Drunen* court did discuss a concern with sham marriages in another part of its opinion, the part discussing the acts-prior-to-marriage exception. Simply stated, the joint participants exception is not qualified by any concern about whether the marriage is a sham.

Furthermore, a joint participants exception is consistent with the general policy of narrowly construing the privilege. The privilege has received much criticism from commentators because it generally retards truth seeking. 8 Wigmore, Evidence § 2228, at 221 (McNaughton rev. 1961) ("In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice."); McCormick, Evidence, § 66, at 145–46 (2d ed. 1972) ("The privilege is an archaic survival of a mystical religious dogma and of a way of thinking about the marital relation that is today outmoded.") The last time the Supreme Court considered the privilege it restricted its availability to the witness-spouse only, making it unavailable to the defendant-spouse. *Trammel,* 445 U.S. at 53, 100 S.Ct. at 914.[1]

Furthermore, at least two other circuits have recognized the joint participants exception to a similar marital privilege, the privilege against one spouse testifying as to the confidential communications of the other. *United States v. Mendoza,* 574 F.2d 1373, 1379–81 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Cotroni,* 527 F.2d 708, 712–13 (2nd Cir.1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). We reject the holding of the Third Circuit that there should not be a joint participants exception to the privilege not to testify against a spouse. *Appeal of Malfitano,* 633 F.2d 276, 278–79 (3d Cir.1980).

---

1. Clark argues that the Supreme Court in *Trammel* implicitly rejected the joint participants exception because the husband and wife in that case were joint participants, and the Supreme Court would have allowed the witness-spouse to invoke the privilege. However, the Supreme Court in *Trammel* was addressing the limited question of whether the accused spouse could invoke the privilege. 445 U.S. at 41–42, 100 S.Ct. at 907–908. The Court gave no consideration to a joint participants exception. The Supreme Court extensively criticized the privilege, *id.* at 50–53, 100 S.Ct. at 912–913, making particularly unwarranted the inference that the Court was implicitly rejecting an exception to the privilege.

The Third Circuit did not consider the principal rationale of *Van Drunen,* that the public interest in discouraging a criminal from enlisting the aid of his or her spouse as an accomplice outweighs the interest in protecting the marriage.

## B. *Acts Prior to Marriage*

■ The district court also relied on the rationale that the acts about which Clark would have testified occurred prior to marriage. This exception was created in the *Van Drunen* decision. 501 F.2d at 397. The *Van Drunen* decision adopted the exception because it was consistent with proposed Fed.R.Evid. 505(c) (which was not adopted, *see* 2 Weinstein's Evidence, at 505–1 (1982)) and because of the possibility that marriages would be entered into for the purpose of suppressing testimony. 501 F.2d at 1397. Clark argues that because there was no evidence that his marriage was a sham the *Van Drunen* rule should not be applied in this case.

Although it is true that *Van Drunen* created the premarriage acts exception because of a concern with collusive marriages, there is nothing in the opinion to suggest that the exception applies only when there is evidence presented of a collusive marriage. By imposing a general rule that the privilege does not cover premarriage acts, courts can avoid mini-trials on the issue of the sincerity of the parties in getting married. The limitation on the scope of the privilege of a spouse not to testify is consistent with the general policy of limiting the privilege because it interferes with fact-finding. *See* pages 301–302, *supra.*

Also, the failure of Congress to adopt proposed Fed.R.Evid. 505(c) did not signal the rejection of the premarriage acts exception. Fed.R.Evid. 501 allows the scope of privileges to be governed "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In rejecting the specific rule relating to a husband-wife privilege, Congress manifested an intention to provide courts with the flexibility to develop rules of privilege on a case-by-case basis. *Trammel,* 445 U.S. at 47, 100 S.Ct. at 910.

Finally, the pre-marriage acts exception has been recognized by two other circuits for the marital privilege for confidential communications. *United States v. Pensinger,* 549 F.2d 1150, 1151 (8th Cir.1977); *Volianitis v. Immigration and Naturalization Service,* 352 F.2d 766, 768 (9th Cir.1965). We can find no cases which have rejected the exception. Clark argues that the Sixth Circuit rejected the exception in *United States v. Barlow,* 693 F.2d 954, 961–62 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). However, it is not at all clear that *Barlow* rejected the exception. In *Barlow* the defendant's wife asserted the privilege not to testify against her spouse even though she and the defendant were married after the illegal acts occurred. *Id.* at 957. As a result, the district court concluded that the witness was "unavailable" for purposes of Fed.R.Evid. 804(a) and allowed the government to introduce her grand jury testimony as evidence with "circumstantial guarantees of trustworthiness" with an unavailable witness under Fed.R.Evid. 804(b)(5). The Sixth Circuit said the admission of the grand jury testimony was proper. *Id.* at 963. The court's ruling on the admissibility of the grand jury testimony did not necessarily imply that the witness was correct in asserting her privilege. A witness is "unavailable" if he or she is exempted from testifying because of a privilege, Fed.R. Evid. 804(a)(1), or if he or she simply refuses to testify. Fed.R.Evid. 804(a)(2). The court did not explicitly state under which subsection the witness was considered unavailable. *Id.* at 957. However, the court did imply that it was Fed.R.Evid. 804(a)(2) by citing that subsection and then stating: "In the case at bar [the witness] was clearly unavailable." *Id.* at 961. Therefore, *Barlow* apparently does not reject the pre-marriage acts exception. Furthermore, even if it did, we would still be bound by the *Van Drunen* decision.

## C. *Exculpatory Nature of the Testimony*

The third basis for the district court's ruling was that the privilege not to testify

against a spouse applies only when the testimony would, on its face, be adverse to the spouse. The rationale is that the purpose of the privilege is to maintain marital harmony, and testimony which is facially exculpatory, even if being used by the government to obtain a conviction, would not threaten marital harmony. Although there is some appeal to this argument, we are troubled by potential problems with subjective determinations of whether a witness' testimony possibly leading to the spouse's conviction would in fact be disruptive of marital harmony. Because the joint participants and pre-marriage acts exceptions clearly make the privilege unavailable to Clark, we need not rule on whether a witness can rely on the privilege not to testify against a spouse when the testimony is facially exculpatory.

The judgment of the district court is affirmed.