**In re GRAND JURY PROCEEDINGS (86–2).**

**Misc. No. 86–0755.**

United States District Court, E.D. Michigan, S.D.

July 25, 1986.

Robert T. Monk, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Barry A. Resnick, Farmington Hills, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

The primary issue involved in this case is whether Terry Irene Guild (Bates), who has been subpoenaed to give continuing testimony before Grand Jury 86–2, can be compelled to give further testimony with respect to her knowledge of the narcotics-trafficking activities of William Preston Guild, III, her husband, who is the target of the grand jury investigation.

The facts relevant to this motion are relatively simple. On May 5, 1986, Terry Guild was subpoenaed to appear before the grand jury and give testimony on May 29,

1986. Prior to testifying, Irene Guild was advised that the scope of the investigation concerned her knowledge of the narcotics trafficking activities occurring from the premises at 2243 Windham, Westland, Michigan, in and about February, 1984. She was also advised that she would be questioned with respect to her knowledge of the narcotics trafficking activities of William Preston Guild, III, a target of the present investigation and others with whom he dealt. Irene Guild was informed that she was not the target of the investigation, but that her activities were within the scope of the investigation.

Irene Guild testified as to her relationship with Guild and her knowledge of the search of the premises in Westland. The witness also produced handwriting exemplars. At the close of the grand jury session on May 29th, Ms. Guild was ordered to reappear on June 10, 1986, for further testimony. On June 6, 1986, Terry Irene Bates Guild married the target of the investigation, William Preston Guild, III. When she appeared before the grand jury on June 10, 1986, Mrs. Guild invoked the spousal bar and refused to give any further testimony with respect to her husband, William Preston Guild, III. Mrs. Guild also refused to answer any further questions on Fifth Amendment grounds.

Thereafter, the government filed a motion to compel Mrs. Guild to give testimony with respect to the activities of her husband. The government contends that the adverse testimony privilege or spousal bar does not apply in this case for two reasons: (1) the marriage of William Preston Guild, III and Terry Irene Guild is a sham or collusive, and (2) the adverse testimony privilege does not bar testimony with respect to matters predating the marriage.

■ The burden of establishing the existence of a privilege rests on the person so asserting it. *See In re Grand Jury Inves-*

*tigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir.1983); *United States v. Hoffa*, 349 F.2d 20 (6th Cir.1965), *aff'd* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).[1]

■ Federal Rule of Evidence 501 provides that the privilege of a witness shall be governed by the principles of the common law as they may be interpreted by the courts of the United States. The spousal privilege has two categories. The "marital communications" privilege bars the testimony of one spouse as to confidential communications with the other spouse made during the course of the marital relationship. This privilege is inapplicable to this case as any confidential communications occurred long prior to the marriage on June 6, 1986.

The second privilege is the privilege against adverse testimony. In the case of *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the Supreme Court modified the long-standing rule that the defendant spouse could invoke the privilege to prevent his or her spouse from testifying adversely against the defendant. The Court in *Trammel* held that a "witness spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." 445 U.S. at 53. While the Court modified the privilege, it reaffirmed the viability of the common law privilege against adverse testimony and noted that the basic purpose of the privilege is to preserve family harmony by preventing spouses from becoming adversaries in criminal proceedings. *Id.; see also United States v. Armstrong*, 476 F.2d 313, 315 (5th Cir.1973).

In the case at hand, the government argues that the privilege against adverse testimony does not apply because the witness' marriage to the target of the grand jury investigation was collusive in nature. Although the government does not dispute

---

1. The government argues that the Recalcitrant Witness Statute, 28 U.S.C. § 1826, requires the witness to show "just cause" for her refusal to comply with the grand jury subpoena. However, the statute, by its very terms, applies only where the witness refuses to comply with an order of the court to testify. In the case at hand, the witness has not yet been ordered to testify. Consequently, the statute would have no application at this point.

the witness' love for Mr. Guild, it does contend that their marriage was specifically calculated to preclude Mrs. Guild's testimony before the grand jury. The government argues that their marriage was timed to preclude further testimony by Mrs. Guild before the grand jury, and accordingly, the privilege should not apply.

The parties correctly note that the controlling case on this issue is *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). In *Lutwak* the Supreme Court held that the privilege against adverse spousal testimony did not apply where the parties entered into a marital relationship with no intent to live together as husband and wife but only for the purpose of using the marriage relationship to defraud the government by bringing a spouse into the United States under the Alien War Brides Act. 344 U.S. at 614, 73 S.Ct. at 487–88. The evidence at trial showed that the veterans and alien "spouses" entered into the marriages for the purpose of securing the entry of the aliens into the country and that the parties never intended, nor did they ever live together as husband and wife. 344 U.S. at 607–09, 73 S.Ct. at 484–85. In holding that the spousal privilege did not apply under these circumstances, the Supreme Court noted:

> When the good faith of the marital relation is pertinent and it is made to appear to the trial court, as it was here, that the relationship was entered into with no intention of the parties to live together as husband and wife but only for the purpose of using the marriage ceremony in a scheme to defraud, the ostensible spouses are competent to testify against each other. Here again, we are not concerned with the validity or invalidity of these so-called marriages. We are concerned only with the application of a common-law principle of evidence to the circumstances of this case. In interpreting the common law in this instance, we are to determine whether "in the light of reason and experience" we should interpret the common law so as to make these ostensible wives competent to testify against their ostensible

husbands. The reason for the rule at common law disqualifying the wife is to protect the sanctity and tranquility of the marital relationship. It is hollow mockery for the petitioners in arguing for the policy of the rule to invoke the reason for the rule and to say to us "the husband and wife have grown closer together as an emotional, social, and cultural unit" and to speak of "the close emotional ties between husband and wife" and of "the special protection society affords to the marriage relationship." In a sham, phony, empty ceremony such as the parties went through in this case, the reason for the rule disqualifying a spouse from giving testimony disappears, and with it the rule.

344 U.S. at 614–15, 73 S.Ct. at 487–88.

█ Unlike the *Lutwak* case, there is no evidence that the Guilds entered into their marriage with no intention of living together as husband and wife. In fact, the Court finds that there is no evidence that the marriage was "timed" to preclude any further testimony by Mrs. Guild with respect to husband, William Preston Guild, III. The evidence, as established at an evidentiary hearing on this matter, shows that the witness, Mrs. Guild, knew Mr. Guild for approximately six to eight years prior to their marriage on June 6, 1986. In October or November of 1984, while Mr. Guild was in Milan Prison, the couple became engaged or decided to get married upon his release in April of 1986. The couple decided they would be married sometime around her son's birthday on June 7th as a surprise to her son, who liked Mr. Guild. No specific date was set because Mrs. Guild tried to arrange a church wedding. When a church wedding could not be arranged, the couple decided to be married by a magistrate in Redford Township on June 6, 1986, the only day of the week marriage ceremonies were performed by the magistrate. The couple applied for their marriage license on June 2, 1986, and Mrs. Guild took the necessary medical exam on approximately June 1st, 2nd or 3rd. Approximately ten people attended the wed-

ding of the couple on June 6, 1986, including family members. Mrs. Guild testified that she did not know in advance of the marriage that if she got married it would bar her testimony against her husband. She further testified that the fact she had been ordered to return before the grand jury on June 10, 1986, to give continuing testimony had nothing to do with setting the date for her marriage on June 6, 1986.

The government would have this Court conclude that this marriage was a sham or collusive due to the fact that the marriage license, medical exam and appointment for the ceremony were all made after Mrs. Guild made her initial appearance before the grand jury on May 29, 1986, and had been ordered to return to give further testimony on June 10, 1986. Mrs. Guild did not attempt to deny that the arrangements were made during this period and the Court finds her explanation for the marriage before the magistrate to be totally credible. In fact, the Court takes note that marriage licenses and medical exams frequently are not accomplished until only a short time before a wedding. The Court cannot infer any improper motive from the fact that these arrangements were made only shortly before the wedding. Simply put, the Court finds that the marriage of Terry Irene Guild and William Preston Guild, III was in no way collusive or a sham and that the privilege against adverse spousal testimony should apply under these circumstances.

The government argues that even if the Court finds the marriage of the Guilds was not collusive, the marital privilege should not apply to bar testimony as to matters occurring prior to their marriage. In other words, the privilege in this case would be of no effect because the testimony sought to be elicited from Mrs. Guild is with respect to matters long prior to the marriage.

The government relies upon the case of *United States v. Van Drunen*, 501 F.2d 1393 (7th Cir.1974), *cert. denied*, 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974), and *United States v. Clark*, 712 F.2d 299 (7th Cir.1983), for the proposition that the privilege against adverse testimony does not apply to matters or acts occurring prior to the marriage. The Sixth Circuit has not adopted such a rule, although it did cite the *Van Drunen* and *Clark* decisions with approval in holding that there was an exception to the marital communications privilege for joint criminal activity. *United States v. Sims*, 755 F.2d 1239 (6th Cir. 1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985). The mere fact that the Sixth Circuit cited such cases for approval with respect to a distinct issue does not necessarily mean that the court will adopt the reasoning of the Seventh Circuit that the privilege against adverse testimony does not apply with respect to matters occurring prior to the marriage.

In light of the breadth of such an exception, the Court is called upon to examine whether it will adopt the reasoning of the Seventh Circuit and order Mrs. Guild to testify to matters occurring prior to the marriage. The *Van Drunen* case involved the joint criminal activities of the defendant and his wife in obtaining the illegal entry of aliens into the United States. The defendant's wife, an illegal alien, married the defendant one month after his indictment. The defendant contended that the trial court committed error in admitting the testimony of the defendant's wife despite assertion of the privilege against adverse testimony. The Seventh Circuit reviewed the policy reasons behind the privilege and concluded that the adverse testimony privilege did not apply where the witness spouse was a participant in the criminal activities of the defendant. 501 F.2d at 1397. In holding that the privilege was limited to those cases where a spouse was neither a victim nor a participant, the court reasoned that only in those circumstances would the policy reasons of preservation of the marriage bar the testimony. *Id.* The court went on to hold that in any event, the defendant's wife's testimony concerned matters prior to the marriage, and that the privilege would be ineffective to bar the wife's testimony. *Id.* The Seventh Circuit appeared to rely upon the proposed amendments to the Federal Rules of Evidence,

Rule 505(c), which provided that the privilege would not apply to matters prior to the marriage.

In the case of *United States v. Clark*, 712 F.2d 299 (7th Cir.1983), the Seventh Circuit reaffirmed its decision in *Van Drunen*, and held that testimony concerning acts occurring prior to marriage were excepted from the adverse testimony privilege regardless of whether the marriage was entered into collusively. 712 F.2d at 302. The court rejected the defendant's argument that the *Van Drunen* exception was adopted because of the possibility that marriages would be entered into for the purpose of suppressing testimony. The court in *Clark* concluded that the exception should apply regardless of whether there was a sham marriage, thereby avoiding mini-trials on the issue of the sincerity of the parties in getting married. The Court also concluded that such exception was consistent with the policy of limiting the privilege because it interferes with fact finding. The court in *Clark* also rejected the suggestion that the failure of Congress to adopt the proposed exception as part of the federal rules signalled its rejection of the premarriage acts exception. 712 F.2d at 302.

While the Court agrees that the scope of privileges is to be governed by principles of common law as interpreted by the courts of the United States, the Court finds no basis for this broad-based exception which threatens to render the entire privilege and its purpose meaningless. Furthermore, the Court is of the opinion that where there is no allegation of joint criminal activity or evidence of a sham marriage, as in the instant case, such an exception cannot be squared with the policy behind the privilege to preserve the institution of marriage.

For these reasons, the Court declines to follow the lead of the Seventh Circuit and holds that the privilege applies without regard to whether the testimony in question would concern matters prior to the marriage.

 As to the question of Mrs. Guild's invocation of a privilege against self incrimination under the Fifth Amendment, the Court concludes that Mrs. Guild cannot assert a blanket claim of privilege and refuse to give any further testimony before the grand jury. No citation of authority need be given for the well-established principle that a privilege must be established on a question-by-question basis.

In conclusion, the Court sustains Mrs. Guild's right to assert the privilege against adverse testimony with respect to her husband, William Preston Guild, III. The Court concludes that the right to raise the privilege against adverse testimony and the privilege against self incrimination may not be done on a blanket basis. Counsel for Mrs. Guild shall submit an appropriate order reflecting the opinion of this Court.