A.B.

v.

**UNITED STATES of America.**

**No. CIV. S–98–3019.**

United States District Court,
D. Maryland.

Sept. 17, 1998.

grand jury to answer questions about her employment, bank accounts, and financial history. As the basis for the motion, A.B. states that she will refuse to testify based upon her Fifth Amendment rights and upon spousal privilege. Because the government has offered A.B. use immunity for her grand jury testimony, the only viable ground for her motion is the privilege against adverse spousal testimony. No oral hearing is needed. Local Rule 207, D. Md.

### Background on Privilege Against Adverse Spousal Testimony

The Supreme Court most recently addressed the privilege against adverse spousal testimony in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). In *Trammel*, the Court ruled that the privilege belongs exclusively to the witness-spouse and that the consent of both spouses was not necessary to allow one spouse to testify against another. The Court concluded that the witness spouse "may be neither compelled to testify nor foreclosed from testifying. This modification—vesting the privilege in the witness-spouse—furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." *Id.* at 53, 100 S.Ct. 906.

The ruling in *Trammel* narrowed the scope of the spousal privilege which had previously allowed either the witness-spouse or the accused to preclude adverse spousal testimony. *See Hawkins v. United States*, 358 U.S. 74, 77, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). The *Hawkins* court justified the prior rule by stating that "the law should not force or encourage testimony which might alienate husband and wife, or further inflame existing domestic differences." *Id.* at 79, 79 S.Ct. 136. However, in *Trammel*, the Court recognized that "[w]hen one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony to preserve." 445 U.S. at 52, 100 S.Ct. 906.

Even while limiting the scope of the marital privilege, the Supreme Court recognized that "the long history of the privilege sug-

Norman N. Yankellow, Baltimore, MD, for Plaintiff.

Lynne A. Battaglia, U.S. Attorney for the District of Maryalnd, Jamie M. Bennett, Assistant U.S. Attorney, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

SMALKIN, District Judge.

A.B. has filed a motion to quash the subpoena requiring her to appear before the

gests that it ought not to be casually cast aside. That the privilege is one affecting marriage, home, and family relationships—already subject to much erosion in our day—also counsels caution." *Id.* at 48, 100 S.Ct. 906. In light of this warning from the Supreme Court, the Fourth Circuit has noted: "Given that the marital privilege is one that remains vital in modern jurisprudence and has been sanctioned by Congress and the Supreme Court, it is apparent that we should guard against turning the privilege into an empty promise." *United States v. Morris*, 988 F.2d 1335, 1339 (4th Cir.1993).[1] Against this backdrop, this Court will address the issues relating to the application of the spousal privilege in this case.

### Does the Privilege Apply to Acts That Occurred Prior to the Marriage?

■ The Government contends that "it is clearly the law that the adverse testimony privilege does not apply to the spouse's testimony about facts that occurred before the marriage." As a result, the Government concludes that it can rightfully question A.B. "about any events, including events involving Mr. A.B., that occurred before the marriage." In support of its position, the Government relies on two opinions from the Seventh Circuit, *United States v. Van Drunen*, 501 F.2d 1393 (7th Cir.1974) and *United States v. Clark*, 712 F.2d 299 (7th Cir.1983) and the decision rendered by Judge Garbis in *In re Grand Jury Subpoena of [Witness]*, 884 F.Supp. 188 (D.Md.1995).

In *Van Drunen*, the defendant was charged with transporting illegal aliens from the Mexico border in Texas to Illinois. About a month following the indictment, the defendant married one of the aliens that he had illegally transported, and he argued that the trial court should have precluded her testimony under the privilege against adverse spousal testimony. After reviewing the policy considerations underlying the privilege, the Seventh Circuit determined that the adverse testimony privilege should not apply where spouses are joint participants in

a criminal activity. Specifically, the court limited the privilege "to those cases where it makes most sense, namely, where a spouse who is neither a victim nor a participant observes evidence of the other spouse's crime." 501 F.2d at 1397. However, the court continued, "[i]n any event, we conclude that since defendant's wife's testimony concerned matters prior to the marriage, the privilege against testimony of a spouse is inapplicable in accordance with Rule 505(c) of the proposed Federal Rules of Evidence, which is framed to eliminate the possibility of suppressing testimony by marrying a witness." *Id.*

In *Clark*, the Seventh Circuit extended *Van Drunen*, holding that the privilege against spousal testimony does not apply to acts prior to a marriage even in the absence of any evidence that the marriage had been entered into collusively. The court noted:

> Although it is true that *Van Drunen* created the premarriage acts exception because of concern with collusive marriages, there is nothing in the opinion to suggest that the exception applies only when there is evidence presented of a collusive marriage. By imposing a general rule that the privilege does not cover premarriage acts, courts can avoid mini-trials on the issue of the sincerity of the parties in getting married.

712 F.2d at 302.

The *Clark* court attempted to bolster its holding in stating that "[t]he limitation on the scope of the privilege of a spouse not to testify is consistent with the general policy of limiting the privilege because it interferes with fact-finding." *Id.* In addition, the Seventh Circuit rejected the contention that the failure of Congress to adopt proposed Federal Rule of Evidence 505(c) signaled an implicit endorsement of the application of the spousal privilege to premarriage acts. Instead, the court grounded its decision on Rule 501 of the Federal Rules of Evidence,

---

1. *Accord In re Grand Jury Proceedings (86–2)*, 640 F.Supp. 988, 989 (E.D.Mich.1986) (observing that while the *Trammel* court "modified the privilege, it reaffirmed the viability of the common law privilege against adverse testimony and not-

ed that the basic purpose of the privilege is to preserve family harmony by preventing spouses from becoming adversaries in criminal proceedings").

which allows courts to establish the parameters of evidentiary privileges "in the light of reason and experience." *Id.*

Relying on both *Van Drunen* and *Clark,* Judge Garbis likewise held that the privilege against adverse spousal testimony does not apply to premarriage acts. *In re Grand Jury Subpoena of [Witness],* 884 F.Supp. 188 (D.Md.1995). In that case, the court made the following factual observations:

> Since 1992, Ms. Witness had wished to marry Mr. Target and frequently discussed this desire with him. Mr. Target did not decide that the time had arrived to get married, however, until the grand jury subpoena at issue was served upon Ms. Witness on January 10, 1995, At that point, motivated by the perceived benefit of a claim of spousal privilege before the Grand Jury, Mr. Target agreed to marry Ms. Witness. Therefore, on February 3, 1995, prior to Ms. Witness' Grand Jury appearance and without prior notice to family and friends, Ms. Witness and Mr. Target were legally married in a civil ceremony in Florida.
>
> Since the marriage, Ms. Witness and Mr. Target have lived in separate states. Mr. Target continues to travel to Florida to see Ms. Witness periodically and plans to relocate in Florida at some time in the future.

*Id.* at 189–90.

Despite his skepticism concerning the circumstances surrounding the marriage, Judge Garbis found that the accused and the witness spouse had been "genuinely married and that the obtaining of spousal privilege protection for Mr. Target was a substantial motivating factor but not the only reason for the marriage." *Id.* at 190.[2] However, in allowing Ms. Witness to invoke the privilege against adverse spousal testimony based on the existence of a valid marriage, Judge Garbis specifically excluded any premarriage matters from the scope of the privilege. Adopting the bright line rule in *Clark,* he

held that this limited application of the spousal privilege would avoid a mini-trial " 'on the issue of the sincerity of the parties in getting married.' " *Id.* at 191 (quoting *Clark,* 712 F.2d at 302). He also noted that restricting the scope of the privilege to those acts which had occurred since the marriage furthered the policy that " 'the public ... has the right to every man's evidence.' " *Id.* (quoting *Trammel,* 445 U.S. at 50, 100 S.Ct. 906).

In reading *In re Grand Jury Subpoena of [Witness],* it seems that Judge Garbis was determined to limit the scope of his decision to minimize the degree to which the couple could seek the protection of the privilege. He concluded that "[p]articularly in light of the facts in the instant case, the spousal privilege should not be available to block testimony as to events and communications occurring prior to marriage." *Id.* at 191–92.

Although recognizing the concerns raised by Judge Garbis and the difficult facts which he encountered, involving some doubt about the *bona fides* of the parties' marriage, this Court, with all due respect, chooses not to adopt the rule set forth in *In re Grand Jury Subpoena of [Witness].* That decision largely rests on caselaw from the Seventh Circuit, but in two cases subsequent to *Clark,* the Seventh Circuit has noted that the privilege does, in fact, apply to acts that occur prior to marriage. In *United States v. Byrd,* 750 F.2d 585, 590 (7th Cir.1984), the court remarked that the "testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage." Thus, the court concluded that the "testimonial privilege, should the witness-spouse assert it, applies to *all testimony* against a defendant-spouse, including testimony on nonconfidential matters and *matters which occurred prior to marriage.*" *Id.* (emphasis added). *See also United States v. Lofton,* 957 F.2d 476, 477 (7th Cir. 1992) (observing that the testimonial privilege includes "matters which occurred prior to the marriage").[3] Under the rationale in

---

**2.** Unlike *In re Grand Jury Subpoena of [Witness],* the Government in this case has presented no evidence nor made any allegation that Mr. A.B. and A.B. entered into their marriage collusively in order to hide behind the cloak of the spousal privilege.

**3.** In neither *Byrd* nor *Lofton* did the Seventh Circuit acknowledge the conflict with its hold-

*Byrd*, limiting the privilege to only those events which occur after a marriage undermines the purpose of the privilege. The effect on a marriage would be equally damaging whether the facts about which the witness spouse testified occurred before or after the marriage. Thus, the more recent decisions of the Seventh Circuit seem to have relegated *Clark* and *Van Drunen* to the status of isolated artifacts.

This Court recognizes the expediency of the rule in *Clark* and *In re Grand Jury Subpoena of [Witness]* in avoiding lengthy inquiries into the validity of marriages to determine if the adverse testimonial privilege should apply. However, the holdings in those cases allow for a "broad-based exception which threatens to render the entire privilege and its purpose meaningless." *In re Grand Jury Proceedings (86–2)*, 640 F.Supp. at 992. Any testimony that A .B. would provide about matters that occurred prior to her marriage would have the same harmful impact on her marital relationship that the privilege seeks to avoid. The privilege is designed to protect marriages "from the discord that occurs when one spouse testifies against the other," regardless of when the events underlying the testimony took place. *Appeal of Malfitano*, 633 F.2d 276, 277 (3d Cir.1980).

Therefore, once a court determines that a valid marriage exists, the privilege against adverse spousal testimony should apply to all matters, whether they occurred before or after the marriage. Only where there is evidence that a marriage is simply a fraud or a sham (not claimed to be the case here) should a court forbid the invocation of the marital privilege.[4] Although it may be necessary for a court to delve occasionally into peripheral issues in determining the legitimacy of a marriage, this is a far more satisfactory outcome than simply eliminating all premarriage matters from the scope of the privilege.

ings in *Clark* and *Van Drunen*.

**4.** *See, e.g., United States v. Saniti*, 604 F.2d 603, 604 (9th Cir.1979) (noting that a "sham" marriage cannot be used to invoke the spousal privilege), *United States v. Apodaca*, 522 F.2d 568,

In addition, although testimonial privileges are narrowly construed to foster full and complete fact-finding, "the possibility that a criminal may not be convicted for the commission of a crime because of the [spousal] privilege is the price which the judicial system accepts in order to further the societal goal of preserving marital harmony." *In re Grand Jury Matter*, 673 F.2d 688, 694 (3d Cir.1982). Despite the countervailing considerations set forth in *Clark* and *In re Grand Jury Subpoena of [Witness]*, this Court believes that exclusion of premarriage matters from the privilege against adverse spousal testimony would transform this rule "into an empty promise." *Morris*, 988 F.2d at 1339.

### Should A.B.'s Testimony About Her Personal Financial History Qualify for the Spousal Privilege?

■ The Government contends that questions posed to A.B. about her personal financial history would not "inevitably elicit information that is adverse to Mr. A.B." and that her testimony should go forward "to determine whether questions asked of her are adverse to her husband on a case-by-case basis." However, given that A.B. is not a target of the grand jury, there seems to be little reason to question her about her personal financial transactions except to implicate her husband. As the Third Circuit observed:

> The fact that the grand jury will consider appellant's testimony and possibly indict her husband on the basis of it will put a strain on their marriage. The husband will be subjected to a trial due to an indictment based in part on appellant's testimony. This is no less of a strain on the marriage than if the appellant testified at his trial.

*Appeal of Malfitano*, 633 F.2d at 280. The Court believes that A.B.'s testimony is sought in the hope that her husband will be indicted. Under the circumstances, her testimony is sufficiently adverse to her hus-

571 (10th Cir.1975) (providing that privilege will not be upheld where "it is based upon a fraudulent, spurious marriage that was not entered into in good faith").

band's interests to warrant protection of the spousal privilege.

### Does an Exception to the Privilege Against Adverse Spousal Testimony Exist Where Spouses Are Joint Participants in a Crime?

■ Mr. A.B. appears to be under investigation for drug trafficking, and the Government argues that A.B.'s answers to certain questions may reveal that "she knew either that her husband had no legitimate income from employment or investments ... or that funds he provided her were the proceeds of illegal activities." The Government asserts that A.B. may be criminally culpable for money laundering due to her knowing use of the proceeds derived from the illegal enterprise. Thus, the Government contends that the adverse testimony privilege should not apply as Mr. A.B. and A.B. were involved as joint participants in a criminal activity.

A handful of circuits have considered whether there should be an exception to the privilege against adverse spousal testimony where the spouses are joint participants in a criminal undertaking. In *Appeal of Malfitano*, the Third Circuit stated that "[a] rule that abrogates the privilege where the spouses have been partners in crime rests on a variety of possible premises, none of which justify [sic] an exception." 633 F.2d at 278. After a thorough review of the numerous rationales behind the joint participant exception, the court rejected this proposed limitation of the privilege. *Id.* at 278–79. Instead, the court concluded that "recognition of an exception where it can be said that both spouses are involved [in criminal activities] will tend to undermine the marriage precisely in the manner that the privilege is designed to prevent." *Id.* at 279.

The Second Circuit agreed with the approach taken by the court in *Appeal of Malfitano*, finding the purposes underlying the privilege outweighed the opposing considerations for imposing the joint participant exception. *In re Grand Jury Subpoena United States*, 755 F.2d 1022, 1028 (2d Cir.1985), *vacated on other grounds sub nom. United States v. Koecher*, 475 U.S. 133, 106 S.Ct.

1253, 89 L.Ed.2d 103 (1986). Specifically the court noted that "[t]he marital privilege rests upon its perceived role in fostering the harmony and sanctity of the marriage relationship." *Id.* at 1028 (internal quotations and citations omitted). In addition, there is a "natural repugnance in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation, and to compelling the culprit to the humiliation of being condemned by the words of his intimate life partner, forced from her by governmental compulsion." *Id.* (internal quotations and citations omitted). Thus, the Second Circuit ruled that "[i]n light of its existence since the early days of the common law and of the importance of the interests which the marital privilege serves, we would leave the creation of exceptions to the Supreme Court or to Congress." *Id.*[5]

The Seventh Circuit has emerged as the leading proponent of the joint participant exception to the spousal privilege. In *Van Drunen*, the court reasoned that the public interest in preserving the family did "not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or coconspirator he is creating another potential witness." 501 F.2d at 1396. However, as the Second Circuit noted, the Supreme Court's holding in *Trammel* undermines this logic as "[a] person desiring to enlist the aid of his spouse as an accomplice cannot now be sure that he is not creating another potential witness; he takes the risk that the spouse may choose to testify." *In re Grand Jury Subpoena United States*, 755 F.2d at 1026.

As an alternative rationale for the joint participant exception, the *Van Drunen* court also proposed that where spouses collaborated in crime, the marriage was not likely to be "an important institution contributing to the rehabilitation of the defendant spouse." 501 F.2d at 1397. Once again, however, the Second Circuit countered, stating that this reasoning "does not strike us as especially forceful; rehabilitation had never been regarded as one of the interests served by the spousal privilege and, so far as it is a factor, participation in a joint crime would not necessarily

---

5. Recently, the Ninth Circuit has also rejected an attempt to carve out a joint participant exception from the privilege against adverse spousal testi-mony. *United States v. Ramos–Oseguera*, 120 F.3d 1028, 1042 (9th Cir.1997).

remove the remorse which would trigger rehabilitation." *In re Grand Jury Subpoena United States,* 755 F.2d at 1026.

In reviewing these cases, this Court finds that there should be no joint participant exception to the spousal privilege in this case. Despite the rationale set forth by the Seventh Circuit,[6] the approach taken by the Second, Third, and Ninth Circuits seems more consistent with the purpose behind the spousal privilege. The privilege, sanctioned by the Supreme Court and hundreds of years of common law, is "designed to protect the marriage relationship as it exists at the time of trial, [and] applies to all testimony of any kind." *United States v. Ammar,* 714 F.2d 238, 258 (3d Cir.1983) (internal quotations omitted). In addition, this Court is "unable to accept the proposition that a marriage cannot be a devoted one simply because at some time the partners have decided to engage in a criminal activity." *In re Grand Jury Subpoena United States,* 755 F.2d at 1026. Thus, preservation of familial harmony and the institution of marriage through the spousal privilege is of paramount importance and will not be frustrated by the joint participant exception.

Accordingly, a separate Order will be entered, granting the motion to quash.

---

**6.** The Seventh Circuit fully affirmed the joint participant exception as outlined in *Van Drunen* in *United States v. Clark,* 712 F.2d 299, 300–02 (7th Cir.1983).